UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

| | |
|---|---|
| PHI, INC. | CIVIL ACTION NO. 6:13-cv-00015 |
| VERSUS | MAGISTRATE JUDGE HANNA |
| APICAL INDUSTRIES, INC., ET AL. | BY CONSENT OF THE PARTIES |

**RULING ON MOTIONS**

Currently pending is the defendants' motion in limine (Rec. Doc. 224) seeking to exclude testimony regarding tort-based liability theories. The plaintiff filed a "trial brief," and to the extent it might be construed as a motion, argued that the defendants should not be able to put on evidence of comparative fault and tort-based affirmative defenses. (Rec. Doc. 229). The defendants objected to this "trial brief" on procedural grounds in their "trial brief" (Rec. Doc. 241), but substantively opposed the plaintiff's brief (to the extent it is construed as a motion). The grounds included prematurity as a procedural problem. Substantively, the defendants argued that if comparative fault is not applicable then the evidence of acts or omissions could still be admitted as relevant to causation and/or failure to mitigate damages. Finally, the defendants contend that, even if comparative fault is not applicable, if the defendants are found liable they are entitled to a 50% reduction in any award of damages based on PHI's settlement with a severed defendant, Rolls Royce, based on Louisiana law applicable to solidary obligors. Also pending are two aspects of the plaintiff's motion in limine

(Rec. Doc. 228) that were not previously resolved. In particular, the plaintiff's motion in limine sought the preclusion of testimony at trial concerning the hammering of the helicopter engine's bearing and the preclusion of testimony concerning the value or repair cost of the helicopter engine. The issues in all of these pleadings are intertwined and, following oral argument at the pretrial conference, this Court deferred ruling on the motion(s) and ordered additional briefing. (Rec. Doc. 252). The parties submitted the required briefs. (Rec. Docs. 254, 255).

Considering the evidence, the law, and the arguments of the parties, and for the following reasons, this Court will consider the plaintiff's trial brief regarding comparative fault and tort-based affirmative defenses (Rec. Doc. 229) as a motion that is opposed by the defendants (Rec. Doc. 241), which is GRANTED IN PART; the defendants' motion in limine regarding tort-based liability theories (Rec. Doc. 224) is GRANTED IN PART; the plaintiff's motion in limine (Rec. Doc. 228) concerning hammering of the bearing is GRANTED; the plaintiff's motion in limine (Rec. Doc. 228) concerning the value or repair cost of the engine is GRANTED; and related orders are issued, as detailed below.

## BACKGROUND

This lawsuit arises out of an incident in which the engine of the plaintiff's helicopter failed and the helicopter was forced to make an emergency landing in the

Gulf of Mexico. The pilot executed a successful auto rotation, inflated the helicopter's floats, and landed safely in the water. The pilot and a passenger successfully exited the helicopter into separate life rafts and were rescued without injury. The helicopter remained upright and afloat for a period of time during which it was lashed to an offshore supply vessel with a rope and towed at slow speed to keep it from drifting away until it could be salvaged. After some period of time, one of the floats deflated, and the helicopter capsized and flooded. Although it did not sink and was ultimately successfully removed from the water, the salt water intrusion allegedly caused enough damage to the helicopter to render it a total loss.

In this lawsuit, the plaintiff originally asserted claims against three defendants.[1] The plaintiff asserted a claim against Rolls Royce Corporation, the manufacturer of the engine, alleging that the engine's failure resulted in the loss of the helicopter. The plaintiff asserted a claim against Apical Industries, Inc., alleging that the float system manufactured and sold by Apical malfunctioned due to a redhibitory defect, resulting in the loss of the helicopter. The plaintiff asserted a claim against Offshore Helicopter Support Services, Inc., alleging that it breached its contractual obligation

---

[1] Although the plaintiff brought claims in tort under the general maritime law and the Louisiana Products Liability Act, those claims were dismissed leaving only the claims described. Jurisdiction over the remaining claims is based on 28 U.S.C. § 1332.

to properly repair and rework the helicopter's float system before the incident, resulting in the loss of the helicopter.

Rolls Royce filed motions to sever and transfer the claims against it pursuant to a forum selection clause contained in its warranty, on which the plaintiffs' claim was based at least in part because the plaintiff also attempted to plead a claim in redhibition. This Court recommended denying the motion finding that severance was improper under F.R.C.P. Rule 21, and therefore, the forum selection clause would not be enforced. (Rec. Doc. 132). The district court adopted the recommendation "in toto." (Rec. Doc. 142). Rolls Royce sought a *writ of mandamus* which was granted by the Fifth Circuit, and the plaintiff's claim against Rolls-Royce was severed from the other claims and transferred to Indiana pursuant to the forum selection clause contained in the warranty. (Rec. Doc. 150). The warranty also had an exclusive choice of law clause mandating the applicability of Indiana law without regard to Indiana choice of law rules. (Rec. Doc. 132, p. 2). The district court in Indiana denied summary judgment sought by Rolls Royce to limit PHI's recovery based on Rolls Royce's Limited Warranty due to disputes of material fact but noted that

"[u]nder Louisiana law, PHI's redhibition claim against Rolls-Royce essentially amounts to a breach of warranty claim."[2] However, that lawsuit was settled.

"Severance under Rule 21 creates two separate actions or suits where previously there was but one. Where a single claim is severed out of a suit, it proceeds as a discrete, independent action, and a court may render a final, appealable judgment in either one of the two actions notwithstanding the continued existence of unresolved claims in the other."[3] Therefore, implicit in the Fifth Circuit's ruling mandating the severance and transfer of the case against Rolls Royce was a finding that the case against Rolls Royce was sufficiently independent of the claims against the other defendants that it was not necessary that the claims be litigated in the same forum.[4]

## ANALYSIS

**1. EVIDENCE CONCERNING THE CAUSE OF THE ENGINE FAILURE**

This Court is convinced that Apical's floatation system was designed to work only in the event that the helicopter to which it was attached and made a part of was

---

[2] *Petroleum Helicopters, Inc. v. Rolls-Royce Corp.,* 2016 WL 7179362 *2, n. 2 (S.D. Ind. Dec. 9, 2016).

[3] *United States v. O'Neil,* 709 F.2d 361, 368 (5th Cir. 1983); *Vander Zee v. Reno,* 73 F.3d 1365, 1368 n.5 (5th Cir 1996); *Chrysler Credit Corp. v. Country Chrysler, Inc.,* 928 F.2d 1509, 1519 (5th Cir. 1991).

[4] *In re Rolls Royce Corporation*, 775 F.3d 671 (5th Cir. 2014).

forced to make an emergency landing in the water. Therefore, how or why the engine malfunctioned is immaterial to the issue of whether there was a redhibitory defect in Apical's float system and immaterial to whether OHS's alleged breach of contract led to the failure of the floatation system.

Under Federal Rule of Evidence 401, evidence is relevant if it has a tendency to make a fact more or less probable and that fact is consequential in determining the action. This Court finds that evidence designed to establish why the engine failed would not make a finding regarding the existence of a redhibitory defect or breach of contract more probable and would not be of consequence to the issues that must be determined at trial.

Even if such evidence were relevant, however, it would be excluded under Federal Rule of Evidence 403. That rule permits the exclusion of relevant evidence if its probative value is outweighed by a danger of unfair prejudice, confusing the issues, or misleading the jury. In this case, the plaintiff might be prejudiced and the jury might be confused if evidence were presented at trial regarding the cause of the engine failure. Accordingly, no evidence will be permitted at trial concerning the cause of the engine failure. This ruling includes not only evidence of the hammering of the bearing set forth in the plaintiff's motion in limine, but the entirety of the

deposition testimony of Dr. Edney in his capacity as the corporate representative of Rolls Royce.

## 2. PHI'S ALLEGED JUDICIAL ADMISSIONS IN ITS ALLEGATIONS AGAINST ROLLS ROYCE

In their recent briefing used to supplement the arguments as to what type of offset or credit the defendants should get given the settlement between PHI and Rolls Royce, the defendants argued that they are entitled to a finding of a judicial admission that Rolls Royce's engine contained a redhibitory defect that proximately caused the helicopter to overturn in the water. This position is based on allegations to that effect set forth in the plaintiff's amended complaint. As set forth above, the plaintiff's claim against Rolls Royce is governed exclusively by Indiana law pursuant to the contract on which the case against Rolls Royce proceeded, not Louisiana law. There is no evidence offered or argued that PHI either did not nor could not have amended its complaint to eliminate that allegation after the case was transferred.

"A judicial admission is a formal concession in the pleadings or stipulations by a party or counsel that is binding on the party making them" but may be withdrawn if allowed by the court.[5] Since redhibition is a doctrine peculiar to Louisiana law and no evidence was presented concerning its applicability under Indiana law, this Court

---

[5] Cf. *Martinez v. Bailey's Louisiana, Inc.,* 244 F.3d 474, 476-77 (5th Cir. 2001); *Time Insurance Co. v. White.,* 354 Fed. App'x. 80, 81 (5th Cir. 2009).

finds that Apical and OHS are not entitled to have the allegations of the complaint regarding a redhibitory defect in the engine deemed admitted as a fact.

**3.   THE FAA REGULATIONS**

In their recent briefing, Apical and OHS argued that the floatation system was not "designed to be a fail safe measure which. . . guaranteed that the Helicopter would be recovered" but was instead designed to "keep the aircraft afloat long enough for the pilot and any passengers to safely exit into life rafts." (Rec. Doc. 254 at 4). Apical and OHS contend that this is a basis for permitting evidence at trial regarding Rolls Royce's liability for the loss of the helicopter.

This Court finds, however, that the argument does not support a finding that the jury should be permitted to hear evidence concerning the *cause of the engine failure*. Instead, any such evidence is relevant to whether there was a redhibitory defect in the float system. If, as Apical and OHS contend, the float system worked precisely as it was designed to work by allowing the pilot and passenger to safely evacuate the helicopter after it landed in the water, then there will be an evidentiary basis for the jury to conclude at trial that the float system did not contain a redhibitory defect, that OHS did not breach its contract with PHI, and that Apical and OHS are not liable to the plaintiff. Whether the float system functioned as it was intended to

is not a valid basis for permitting the jury to hear evidence concerning the cause of the engine failure.

It will be undisputed at trial that engine failure caused the need for the helicopter to ditch in the water. While the engine failure and the floatation system failure were independent events, separated in time and having different causes, the defendants are free to argue that neither a redhibitory defect nor a breach of contract caused the loss of the helicopter since the float system did what it was designed to do, and therefore, the loss of the helicopter was caused by the engine failure. The defendants' argument seeks to unnecessarily and confusingly conflate the two events, and this Court remains unpersuaded that the jury should be permitted to hear evidence concerning the cause of the engine failure.

4. **EVIDENCE REGARDING COMPARATIVE FAULT AND TORT-BASED LIABILITY THEORIES**

The plaintiff has only two contract-based claims to be presented at trial: a redhibition claim against Apical and a breach of contract claim against OHS. (Rec. Doc. 84, 85). Because only contract-based claims remain, neither PHI's comparative fault nor the fault of any other party (or non-party) is at issue. In *Hollybrook Cottonseed Processing, LLC*, No. 09-750, 2011 WL 2214936 (W.D. La. June 6, 2011), a Louisiana district court concluded that comparative fault principles are not

applicable to a redhibition claim. In *Hanover Insurance Company v. Plaquemines Parish Government*, No. 12-1680, 2015 WL 4167745 (E.D. La. July 9, 2015), a Louisiana district court concluded that the Louisiana Supreme Court would likely find that Louisiana Civil Code Article 2323, which addresses comparative fault, applies to tort claims only and does not apply to breach of contract claims. This Court finds the reasoning employed in those two cases and the conclusions reached in both of them to be sound and persuasive. Therefore, for the reasons set forth in the cited cases, this Court similarly finds that comparative fault principles should not be applied in this case because the only two surviving claims are contract-based claims for redhibition and breach of contract.

Conversely, in addition to the engine failure, the defendants contend the float was punctured by the actions of the recovery vessel or its crew and that is what caused it to deflate. This evidence does not go to comparative fault but to causation of the float deflation, i.e. whether the float contained a redhibitory defect that caused the plaintiff's damage, or whether the breach of contract caused the plaintiff's damage, or whether some act or omission of a third party caused the float to deflate. Therefore, the Court will allow evidence as to what caused the float to deflate after the aircraft was in the water. However, this will not be in the nature of determining negligence or tort-based fault; rather, it will be admitted solely for the purpose of

addressing what caused the float to deflate. No evidence will be permitted at trial with regard to the comparative fault of the parties (or non-parties) utilizing any tort-based theories of recovery or any tort-based affirmative defenses.

With regard to the defendants' motion, the testimony of the experts will be limited to exclude reference to tort-based theories. However, what Apical knew and when is relevant even though they are deemed to have knowledge of the alleged defect as the manufacturer of the float system. Louisiana Civil Code Article 2545 provides in pertinent part:

> A seller who knows that the thing he sells has a defect but omits to declare it, or a seller who declares that the thing has a quality that he knows it does not have is liable . . . for damages and reasonable attorney's fees.

Therefore, what Apical knew, when they knew it, and what was represented to PHI are not only relevant in this context, but in the context of whether the performance rendered by OHS was "deficient" after the Service Information Bulletin was issued. No evidence concerning a "duty to warn" will be allowed. Actions Apical should have taken will be allowed such as whether the Alert should have been published instead of the Service Information Bulletin. Since the former is mandatory for entities such as OHS, and the latter is permissive, this is relevant to the claim

against OHS for "deficient performance." However, as previously ruled, introduction of the Alert issued after the fact will not be admissible.

The very existence of the doubler itself is evidence of an alternative design, and therefore, that evidence will be allowed. The alleged insufficiency of actions of Apical are relevant to the performance of OHS and will be admitted. Any reference to "negligence" by OHS is inadmissible; however, the alleged failure of OHS to meet industry standards is admissible.

As indicated at the pretrial conference, this Court will rule on Mr. Yakubovich's testimony as it is presented and counsel is reminded of the caution given at the pre-trial conference.

**5.    SOLIDARY LIABILITY**

With regard to the apportionment of liability, this Court finds that Rolls Royce is not solidarily liable with Apical or OHS, and the jurors will not be asked to apportion liability as between Rolls Royce and any other defendant. An obligation is solidary under Louisiana Civil Code Article 1794 when each obligor is liable for the whole performance. If there is a redhibitory defect that caused the loss of the helicopter, Apical is liable for the whole loss without regard to whether any other party is "at fault." The same can be said for OHS. If OHS breached a contract, it is responsible for the whole loss regardless of the fault of any other party. Therefore,

Apical and OHS are potential solidary obligors because each can be liable for the whole thing.

PHI's claim proceeded against Rolls Royce in Indiana and was governed by Indiana law. The warranty executed by PHI with Rolls Royce for the part that failed provided in pertinent part:

> THIS WARRANTY IS GIVEN EXPRESSLY AND IN PLACE OF ALL OTHER WARRANTIES, EXPRESS OR IMPLIED, INCLUDING ANY IMPLIED WARRANTIES OF MERCHANTABILITY OR FITNESS FOR PARTICULAR PURPOSE. THERE ARE NO UNDERSTANDINGS, AGREEMENTS, REPRESENTATIONS, OR WARRANTIES NOT SPECIFIED HEREIN.
> * * * * *
> The obligations of Rolls-Royce under this Limited Warranty are limited to the repair of the spare module/part as provided herein. In no event, whether as a result of a breach of contract or warranty, alleged negligence or otherwise, shall Rolls-Royce be subject to liability for incidental, consequential, indirect, special or punitive damages of any kind . . .[6]

No argument was presented in an effort to establish what Indiana's law on solidary (or joint and several) liability might be or to show how it should be applied in the context of this litigation. However, Indiana law does allow for the limitation of consequential damages even if a limited warranty fails of its essential purpose.[7] Applying Indiana law to the contract, Rolls Royce would not be liable for the same

---

[6] Rec. Doc. 106-5, p.2.

[7] *Rheem Mfg. Co. v. Phelps Heating & Air Conditioning, Inc.* 746 N.E.2d 944, 946-47 (In. 2001); Indiana Code § 26-1-2-719.

performance as Apical and OHS, and therefore, Rolls-Royce would not be solidarily liable with them.

In the Indiana litigation, PHI argued that the Limited Warranty failed of its essential purpose, and the district court denied Rolls Royce's summary judgment motion without distinguishing the *Rheem* decision citing a case that actually granted summary judgment in favor of the defendant.[8] This Court was not briefed on the applicability of Indiana law but, based on its own research, concludes that the *Rheem* decision remains the latest expression of the Indiana Supreme Court, and therefore, since Rolls Royce would not be liable for the whole performance, it would not be a solidary obligor under Louisiana law. However, that does not leave Apical and/or OHS without some remedy for the engine failure.

6. **EVIDENCE REGARDING THE VALUE OF THE ENGINE**

The parties agreed that the value of the engine or the cost to repair the engine should be considered separately from the issues presented at trial, and they further agreed that the value of the engine or the cost to repair the engine should be deducted from any award that might be entered against Apical or OHS. Any damage sustained by the helicopter's engine occurred before the helicopter overturned; accordingly, that damage was not caused by either Apical or OHS. While the failure of the Rolls

---

[8] See *Pizel v. Monaco Coach Corp.* 364 F.Supp.2d 790, 796-97 (N.D. In. 2005).

Royce engine necessitated the helicopter's emergency landing, the plaintiff's theory is that the helicopter would have been salvaged if the floatation system had not failed. Had the helicopter been salvaged, however, it would have been salvaged with a damaged engine since the engine failure occurred before the helicopter landed in the water and was not caused in any way by anything that Apical or OHS did or did not do. If the helicopter was a total loss, then the engine was a total loss. Therefore, there is no theory under which Apical or OHS could be held liable for the value of the helicopter's engine or the cost to repair the engine.

PHI suggested that the issue of the value of the helicopter's engine or the cost to repair it should be severed from the other issues to be tried, and that an evidentiary hearing should be held. The Court declines the invitation. It will be ordered that any expert witness testifying at trial with regard to the amount of the damages sustained by the plaintiff will be required to testify as to the value of the helicopter minus the value of the helicopter's engine. No evidence will be permitted regarding the value of the helicopter including the engine, and no evidence will be permitted regarding the cost to repair the engine.

## **CONCLUSION**

For the foregoing reasons,

IT IS ORDERED that the plaintiff's trial brief (Rec. Doc. 229) is considered to be a motion in limine which is GRANTED IN PART, and no evidence of comparative fault or tort-based affirmative defenses will be permitted. However, evidence of acts or omissions by others, exclusive of the cause of the engine failure, as the cause of the capsizing and flooding of the helicopter will be allowed.

IT IS FURTHER ORDERED that the defendants' motion in limine regarding comparative fault and tort-based affirmative defenses (Rec. Doc. 224) is GRANTED IN PART, and no evidence will be permitted at trial regarding the duty to warn owed by Apical, or the negligence of OHS.

IT IS FURTHER ORDERED that the plaintiff's motion in limine (Rec. Doc. 228) concerning hammering of the bearing is GRANTED, and no evidence will be permitted at trial regarding the cause of the failure of the helicopter's engine.

IT IS FURTHER ORDERED that the plaintiff's motion in limine (Rec. Doc. 228) concerning the value or repair cost of the engine is GRANTED, and any damages expert who testifies at trial will be required to testify as to the value of the helicopter minus the value of the helicopter's engine as no evidence will be permitted regarding the value of the helicopter including the engine or the cost to repair the helicopter's engine.

IT IS FURTHER ORDERED that in the event the defendants are found liable, the defendants are not entitled to a 50% credit for the settlement between PHI and Rolls Royce.

Signed at Lafayette, Louisiana on this 26th day of October 2017.

_____
PATRICK J. HANNA
UNITED STATES MAGISTRATE JUDGE