UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

PHI, INC.                                    CIVIL ACTION NO. 6:13-cv-00015

VERSUS                                       MAGISTRATE JUDGE HANNA

APICAL INDUSTRIES, INC., ET AL.              BY CONSENT OF THE PARTIES


## FINDINGS OF FACT AND CONCLUSIONS OF LAW


By consent of the parties pursuant to 28 U.S.C. § 636(c), this matter came

before the Court for trial by jury starting on November 13, 2017 and concluding on

November 15, 2017.  The case involved a helicopter owned by PHI, Inc. that ditched

in the Gulf of Mexico following engine failure.  The pilot successfully landed in the

water with the floats fully deployed.  After a period of time, one of the floats deflated

and the helicopter capsized.  PHI sued the engine manufacturer, Rolls-Royce

Corporation; the float manufacturer, Apical Industries, Inc.; and a company that

performed maintenance and repair on the float system, Offshore Helicopter Support

Services, Inc. ("OHS").  The claim against Rolls-Royce was severed and transferred

to the Southern District of Indiana by virtue of a forum selection clause.  That claim

settled before trial, and this Court ruled that evidence regarding the cause of the

engine failure was not admissible.  The remainder of the case was tried in this venue.

The jury found that the helicopter was a total loss and awarded damages against Apical for the total market value of the helicopter. OHS was exonerated. That verdict has not yet been reduced to judgment because, by agreement of the parties, this Court was called upon to determine (1) the amount of offset to the jury's verdict for the value of the engine and/or the cost to repair the engine prior to the helicopter capsizing assuming it could have been successfully recovered, and (2) the amount of attorneys' fees PHI is entitled to recover due to its successful prosecution of its redhibition claim against Apical. A separate set of findings of fact and conclusions of law will address and resolve the issue related to the value of the engine. This set of findings of fact and conclusions of law will address and resolve the issue related to PHI's claim for the recovery of attorneys' fees.

The parties extensively briefed this issue (Rec. Docs. 289, 292, 293), and a hearing was held on April 19, 2018 at which PHI introduced evidence concerning the attorneys' fees it incurred in this lawsuit and at which Apical challenged PHI's contentions. The parties then supplemented the record. (Rec. Docs. 298, 299).

This Court, having carefully considered the testimony of all of the witnesses, the exhibits entered into evidence, the record, the memoranda submitted by the parties, and the applicable law, now makes the following findings of fact and conclusions of law as required by Rule 52 of the Federal Rules of Civil Procedure.

To the extent any conclusion of law is deemed to be a finding of fact, it is adopted as such. Likewise, to the extent any finding of fact is deemed to be a conclusion of law, it is adopted as such.

## FINDINGS OF FACT

On December 1, 2011, the engine in one of PHI's Bell 407 helicopter failed, causing the pilot to make an emergency landing in the Gulf of Mexico. The pilot successfully engaged the float system and landed in the water. The pilot and passenger safely exited the helicopter in life rafts and were recovered without injury. Some period of time passed with the helicopter afloat and secured to an offshore supply vessel by a line. At some point, one of the float bags deflated and the helicopter capsized, resulting in its engine and various electronic components being completely immersed in salt water. Notwithstanding anything else to the contrary, the lengthy immersion in salt water would have rendered the helicopter a total loss.

PHI filed suit against Apical, OHS, and Rolls-Royce in the 15th Judicial District Court, Lafayette Parish, Louisiana, on December 3, 2012, seeking to recover for the loss of the helicopter. (Rec. Doc. 1-1 at 10). The suit was removed to this court on January 4, 2013. (Rec. Doc. 1). On May 27, 2015, PHI's claims against Rolls-Royce were severed and transferred to the United States District Court for the Southern District of Indiana, Indianapolis Division. (Rec. Doc. 158). PHI's claim against

Rolls-Royce was settled before trial. PHI's claims against Apical and OHS were tried to a jury on November 13-15, 2017. (Rec. Docs. 265, 269, 271). The jury found that the right-hand rear float manufactured and sold by Apical contained a redhibitory defect that caused the damage to the helicopter. (Rec. Doc. 277). The jury did not find that OHS was liable for the damage to the helicopter. (Rec. Doc. 277). The jury awarded $2,180,000 in damages. (Rec. Doc. 277).

Oral argument was held on April 19, 2018. Before the hearing, PHI submitted a motion for attorneys' fees (Rec. Doc. 289), supported by the affidavit of its counsel, Ross Cunningham (Rec. Doc. 289-1). Attached to Mr. Cunningham's affidavit were the invoices for legal services directed to PHI by its counsel over the course of this litigation. Apical submitted a response to PHI's fee petition (Rec. Doc. 292), challenging PHI's entitlement to certain fees claimed and suggesting an alternative attorneys' fee award.

In its submissions, PHI presented the testimony of its counsel, Ross Cunningham. Mr. Cunningham testified that he was lead counsel for PHI over the entire five-year course of the litigation. When the lawsuit was initiated, he was a partner at Rose Walker LLP but in January 2015 he moved to Cunningham Swaim LLP. He testified that the total amount of attorneys' fees billed to PHI with regard to this matter by Rose Walker LLP was $447,414.00 and the total amount of

attorneys' fees billed to PHI with regard to this matter by Cunningham Swaim was $224,281.37, for a grand total of $654,004.50 in attorneys' fees.[1] PHI proposed that, from that total, certain amounts should be deducted. First, PHI argued that $19,522.50 should be deducted for work performed by PHI's counsel with regard to the venue issue regarding its claim against Rolls-Royce before the United States Supreme Court. PHI argued that its practice before the Supreme Court related solely to its claim against Rolls-Royce and, for that reason, was unrelated to its successful redhibition claim against Apical. Second, PHI argued that the fees attributable to the litigation against Rolls-Royce after that claim was severed and transferred to Indiana, should be deducted as unrelated to the successful redhibition claim against Apical. Third, PHI argued that ten percent of the remaining fees should be deducted to reflect the litigation against OHS on a contract-based claim that was different from the successful redhibition claim against Apical. PHI argued that, after taking these deductions, it should be awarded $478,321.65. PHI also argued that it should be awarded an additional $100,000 to $150,000 in attorneys' fees in the event of appeal.

Apical challenged PHI's contentions, arguing that additional deductions should be made, resulting in a total recovery of attorneys' fees in the amount of $155,262.50.

---

[1] However, Mr. Cunningham and PHI actually documented only $649,804.00 in attorneys' fees, which will be discussed in more detail, below.

More particularly, Apical argued (1) that the attorneys' fees related to the litigation of the severance and transfer disputes in this court and in the Fifth Circuit Court of Appeals should be deducted, (2) that additional amounts supported by time entries pertaining exclusively to the claim against Rolls-Royce following the transfer to Indiana should be deducted, (3) that attorneys' fees supported by duplicative and vaguely worded time entries should be deducted, (4) that PHI's ten percent deduction to account for the litigation against OHS should be increased to fifty percent, (5) that PHI's counsel's billing rates are excessive, (6) that Apical should not have to pay fees supported by time entries with unexplained redactions, and (7) that PHI is not entitled to recover prospective fees that might be incurred on appeal. Having considered the evidence presented and the arguments of counsel, this Court finds that PHI should be awarded the sum of $301,963.50 in attorneys' fees incurred with regard to its successful redhibition claim against Apical. The reasons for this conclusion are explained in detail, below.

## CONCLUSIONS OF LAW

The defendants removed this action to federal court on the basis of diversity jurisdiction. A federal court sitting in diversity must apply state substantive law and

federal procedural law.[2]   Therefore, Louisiana's substantive law must be applied.[3]

Under Louisiana law, attorneys' fees are only recoverable when authorized by statute

or contract.[4]   In Louisiana, attorneys' fees are recoverable by a plaintiff who succeeds

on a redhibition claim against a party that was not only the seller but also the

manufacturer of a product.[5]   In this case, it is undisputed that Apical was both the

manufacturer and the seller of the subject float system, which the jury found to

contain a redhibitory defect.   Therefore, PHI is entitled to recover from Apical

"reasonable attorney fees"[6] with regard to its successful redhibition claim.

The purpose of awarding attorneys' fees and expenses in redhibition cases is

to restore the purchaser, as much as possible, to the condition he enjoyed prior to the

sale.[7]   Under Louisiana law, a trial court has great discretion in awarding attorneys'

---

[2]   *Erie R. R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938); *Gasperini v. Ctr. for Humanities, Inc.*, 518 U.S. 415, 427 (1996); *Coury v. Moss*, 529 F.3d 579, 584 (5th Cir. 2008).

[3]   See, e.g., *Moore v. State Farm Fire & Cas. Co.*, 556 F.3d 264, 269 (5th Cir. 2009).

[4]   *Stutts v. Melton*, 2013-0557 (La. 10/15/13), 130 So.3d 808, 814.

[5]   Louisiana Civil Code Article 2545.

[6]   Louisiana Civil Code Article 2545.

[7]   *Hollybrook Cottonseed Processing, L.L.C., v. American Guarantee & Liability Insurance Company*, 662 Fed. App'x 282, 285 (5th Cir. 2016); *Alexander v. Burroughs Corp.*, 359 So.2d 607, 610 (La. 1978); see also *Young v. Ford Motor Co.*, 595 So.2d 1123, 1127 (La. 1992) ("The purpose of the redhibition action in Louisiana. . . has been to restore the status quo.").

fees in a redhibition case.[8]  "Generally, each case is considered in light of its own facts and circumstances; however, the amount awarded must be reasonable."[9]

An award of attorneys' fees in a redhibition case under Louisiana law must be reasonable in light of the degree of skill and work involved in the case, the number of court appearances, the number of depositions, and the office work involved.[10] Similarly, the Louisiana Supreme Court has found the following factors to be relevant in determining the reasonableness of an award for attorneys' fees:  (1) the responsibility incurred; (2) the extent and nature of the work performed; and (3) the counsel's legal know-how and skill.[11]  The Louisiana Supreme Court has also instructed that the following factors, which were derived from Rule 1.5(a) of the Rules of Professional Conduct, should be considered by a court in reviewing the reasonableness of an award of attorneys' fees:  (1) the ultimate result obtained; (2) the responsibility incurred; (3) the importance of the litigation; (4) the amount of money involved; (5) the extent and character of the work performed; (6) the legal knowledge,

---

[8]     See, e.g., *Ryan v. Case New Holland, Inc.*, 51,062 (La. App. 2 Cir. 12/22/16), 211 So.3d 611, 627.

[9]     *Ryan v. Case New Holland, Inc.*, 211 So.3d at 627.

[10]     *Carter Enterprises, LLC v. Scott Equipment Co., LLC*, 46,862 (La. App. 2 Cir. 04/11/12), 91 So.3d 1134, 1144; *Ollis v. Miller*, 39,087 (La. App. 2 Cir. 10/29/04), 886 So.2d 1199, 1209.

[11]     *Lafleur v. John Deere Co.*, 491 So.2d 624, 632-33 (La. 1986).

attainment, and skill of the attorneys; (7) the number of appearances made; (8) the intricacies of the facts involved; (9) the diligence and skill of counsel; and (10) the court's own knowledge.[12]   These factors, which have been applied in redhibition cases,[13] are similar to those used by federal courts in other contexts when the lodestar is first calculated by multiplying the number of hours reasonably expended by an appropriate hourly rate in the community for such work, and other factors are then taken into account after the lodestar amount has been determined.[14]

After reviewing the relevant factors, this Court finds that PHI's counsel was experienced and highly skilled, ultimately achieved a favorable jury verdict, and was responsible for litigating three claims in two very separate venues on a matter of great importance to their client that involved a large sum of money.  The litigation spanned several years, involved extensive motion practice, and required numerous court appearances.  Eighteen depositions were taken.  Although the matter culminated in

---

[12]     *State, Department of Transportation and Development v. Williamson*, 597 So.2d 439, 441-42 (La. 1992).

[13]     See, e.g., *Blair v. Bad Boy Inc.*, 48,953 (La. App. 2 Cir. 04/09/14), 137 So.3d 1223, 1232-33; *Lovell v. Blazer Boats Inc.*, 2011-1666 (La. App. 1 Cir. 10/24/12), 104 So.3d 549, 557; *Health Educ. and Welfare Federal Credit Union v. Peoples State Bank*, 2011-672 (La. App. 3 Cir. 12/07/11), 83 So.3d 1055, 1056.

[14]     *Heidtman v. County of El Paso*, 171 F.3d 1038, 1043 (5th Cir. 1999) ("A lodestar is calculated by multiplying the number of hours reasonably expended by an appropriate hourly rate in the community for such work.  After making this calculation, the district court may decrease or enhance the lodestar based on the relative weights of the twelve factors set forth in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974)") [internal citation omitted].

a jury trial, two additional critical matters were resolved after trial on the basis of adversarial evidentiary proceedings. While the facts of the case were not complicated, the legal arguments were intricate, requiring that the counsel involved be experienced, diligent, and skillful. Thus, the applicable statute and the relevant factors weigh in favor of an award of attorneys' fees to PHI's counsel. Moreover, Louisiana Civil Code Article 2545 mandates an award of "reasonable attorney fees" when a redhibition claim is successful.

This Court must therefore determine the amount of attorneys' fees that should be awarded to PHI, guided by the principle that the award must be reasonable. The party seeking attorneys' fees bears the burden of establishing the reasonableness of the attorneys' fees requested by submitting documentation and time records of the hours reasonably expended and proving the exercise of "billing judgment."[15] "Billing judgment requires documentation of the hours charged and of the hours written off as unproductive, excessive, or redundant."[16] "The proper remedy when there is no evidence of billing judgment is to reduce the hours awarded by a percentage intended

---

[15]     *Black v. SettlePou, P.C.*, 732 F.3d 492, 502 (5th Cir. 2013) (citing *Saizan v. Delta Concrete Products Co., Inc.*, 448 F.3d 765, 799 (5th Cir. 2006)).

[16]     *Saizan v. Delta Concrete Products Co., Inc.*, 448 F.3d at 799.

to substitute for the exercise of billing judgment."[17] Alternatively, the Court may conduct a line-by-line review of the billing statement to determine reasonableness.[18]

PHI presented evidence in support of its claim for an award of $478,321.65 in attorneys' fees, and Apical challenged PHI's calculation of the appropriate fee award in several ways, suggesting that PHI be permitted to recover $155,262.50 in attorneys' fees. Each of Apical's argument will be considered in turn. At the outset, however, this Court makes certain observations. First, Mr. Cunningham's affidavit states that the total amount of attorneys' fees billed to PHI through January 31, 2008 was $654,004.50. (Rec. Doc. 289-1 at 2). But that is inconsistent with Exhibit 3 to Mr. Cunningham's affidavit, which totaled the amount billed in each invoice and stated that $654,004.50 was billed through February 28, 2018. (Rec. Doc. 289-1 at 153). But no invoice dated February 28, 2018 was included in the materials originally submitted by PHI in support of Mr. Cunningham's affidavit. After the hearing on April 19, 2018, PHI submitted its attorneys' February 2018 invoice into evidence. (Rec. Doc. 299-1). The time entries set forth on the invoice all post-date the trial and have to do with PHI's efforts to recover attorneys' fees.

---

[17]     *Walker v. U.S. Dept. of Housing and Urban Dev.*, 99 F.3d 761, 770 (5th Cir. 1996).

[18]     *Hobson v. ABE Development LLC*, No. 15-1480, 2016 WL 5724598, at *2 (E.D. La. Sept. 30, 2016) (citing *Green v. Administrators of the Tulane Educational Fund*, 284 F.3d 642, 662 (5th Cir. 2002), abrogated on other grounds by *Burlington N. & Santa Fe. Ry. Co. v. White*, 548 U.S. 53 (2006)).

It is customary for an attorney to be reimbursed for the time he expends preparing a motion to recover attorneys' fees as a sanction,[19] and some statutes expressly authorize reimbursement of the attorneys' fees incurred in filing a particular type of motion.[20] PHI has the burden of proving the amount of attorneys' fees to which it is entitled. But PHI did not direct this Court to any statutory or jurisprudential authority permitting a successful redhibition plaintiff to recover from its adverse party the attorneys' fees incurred in preparing a motion for attorneys' fees, and the Louisiana statute authorizing the recovery of fees in a redhibition does not expressly address this issue. Accordingly, this Court finds that it would not be appropriate to permit PHI to recover the attorneys' fees it incurred in attempting to recover attorneys' fees from Apical. Therefore, the February 2018 invoice will not be considered. The starting number is $649,804.00 rather than $654,004.50.

Second, several time entries on the invoices submitted by PHI in support of Mr. Cunningham's affidavit are highlighted – some in yellow and some in red. Neither Mr. Cunningham's affidavit nor PHI's briefing explained the significance of the

---

[19]     See, e.g., *Daggs v. Lexington Ins. Co.*, No. 07-7991, 2009 WL 5171392, at *2 (E.D. La. Dec. 17, 2009).

[20]     See, e.g., *Maranto v. Dillard Nat. Bank*, 230 F.R.D. 478, 478-79 (W.D. La. 2005) (noting that Fed. R. Civ. P. 4(d)(2)(B) requires the court to impose costs including the reasonable attorneys' fees incurred in preparing a motion to collect service expenses when a defendant fails to comply with a request for waiver of service).

highlighting, and PHI did not submit a summary exhibit showing how much was deducted from each individual invoice for the sums PHI suggested should be deducted from the attorneys' fee award. On the other hand, however, Apical submitted an exhibit correlating PHI's proposed deductions from the total amount of attorneys' fees it was charged to the individual invoices. Apical noted that the items highlighted in yellow on the invoices submitted by PHI were the time entries that PHI suggested should be subtracted for the severance and transfer issue, while the time entries highlighted in red on the invoices submitted by PHI were the time entries that PHI suggested should be subtracted for litigation in the Southern District of Indiana. The problem with Apical's analysis of the invoices is that PHI highlighted in red (indicating that they pertained solely to the Indiana litigation) numerous time entries post-dating the settlement of the Indiana lawsuit.[21] Therefore, PHI submitted invoices from its attorneys but did not clearly delineate the time entries that allegedly correlate to its conclusory contentions (set forth in its briefing and in Mr. Cunningham's affidavit) that $19,522.50 in fees pertained solely to PHI's appeal of the severance and transfer issue to the United States Supreme Court and $102,983.50 in fees pertained solely to PHI's litigation of its claim against Rolls-Royce in Indiana. Since

---

[21]     Apical also noted that PHI apparently highlighted in red time entries after May 1, 2017 and conceded that any such entries did not pertain to PHI's claim against Rolls-Royce.

PHI has the burden of proof on this issue, to the extent the Court cannot discern the proper allocation of the incurred fees, any doubts must be construed against PHI.

Apical challenged PHI's attorneys' fee claim in several respects. First, Apical argued that PHI erred in failing to deduct from the amount sought to be recovered any amounts relating to the severance and transfer dispute in the district court and in the Fifth Circuit, deducting only the amount of attorneys' fees it incurred in taking its fight about that issue to the United States Supreme Court. In this lawsuit, PHI asserted claims against Rolls-Royce, Apical, and OHS. Rolls-Royce successfully sought to have PHI's claim against it severed from the other claims and transferred to the United States District Court for the Southern District of Indiana, on the basis of a choice-of-law provision in a warranty document issued by Rolls-Royce. PHI opposed Rolls-Royce's attempts to change the lawsuit's venue but ultimately did not prevail. This Court finds that the amount of attorneys' fees charged to PHI in connection with its attempt to avoid the change of venue – in the district court, in the appellate court, and in the Supreme Court – totaled $105,924.50.[22] PHI argued that Apical should be required to pay all of that amount except for $19,522.50 that PHI

_____

[22] Apical calculated this figure at $105,925.00 and highlighted the relevant time entries in yellow (both dark yellow and light yellow) on an exhibit submitted in support of its briefing (Rec. Doc. 292-1) and summarized these deductions on another exhibit (Rec. Doc. 292-2). This Court's arithmetic resulted in a fifty cent difference, in PHI's favor. This difference is likely attributable to rounding.

incurred at the Supreme Court level. PHI's strongest argument is that Apical

contended up until trial – when this Court ruled the testimony was inadmissible – that

the accident was caused by a defect in Rolls-Royce's engine rather than by a defect

in its float system. In other words, Apical attempted to deflect liability from itself

onto Rolls-Royce even after PHI's claim against Rolls-Royce had been severed from

the other claims, moved to Indiana, and settled. Regardless of Apical's insistence that

Rolls-Royce caused the loss of the helicopter, however, PHI can recoup from Apical

only those attorneys' fees attributable to PHI's successful redhibition claim against

Apical since the existence of PHI's redhibition claim against Apical is the only

statutory basis on which PHI is entitled to recover attorneys' fees for the legal work

done in connection with this lawsuit. The work performed by PHI's attorneys in

attempting to thwart Rolls-Royce's successful attempt to sever and transfer PHI's

claim against Rolls-Royce is not related to PHI's redhibition claim against Apical; it

relates solely to PHI's claim against Rolls-Royce. Had Apical been successful in

arguing that the problem with Rolls-Royce's engine should have been presented to

the jury trying PHI's claims against Apical and OHS, the result might have been a

reduction in the amount of PHI's damages to be borne by Apical. But it would not

have changed the fact that PHI can recover from Apical only those attorneys' fees

attributable to the successful redhibition claim. Therefore, the entirety of the

attorneys' fees incurred by PHI with regard to the severance and transfer issues must be deducted from the attorneys' fees claimed by PHI. This Court accordingly finds that the sum of $105,924.50 should be deducted from the total amount of attorneys' fees charged to PHI by its counsel.

Second, Apical argued that PHI's deductions for the time it devoted to its claims against Rolls-Royce after those claims were transferred to the Southern District of Indiana overlooked numerous entries on PHI's fee bills that should also have been deducted. After carefully reviewing the invoices submitted by PHI in support of its motion, this Court concurs with Apical's analysis. PHI presented evidence that it incurred $102,985.50 in attorneys' fees for work performed with regard to its claim against Rolls-Royce after that claim was severed and transferred to Indiana. However, the derivation of that number cannot be ascertained from the copies of the invoices for legal services that PHI submitted to the court.

PHI highlighted in red (to indicate that they were attributable to the litigation of the action in Indiana) various time entries post-dating its settlement with Rolls-Royce and including preparation for and trial of the Louisiana litigation. Further, this Court's review of the invoices submitted by PHI revealed that PHI did not accurately identify the charges attributable solely to PHI's claim against Rolls-Royce after the

suit was transferred to Indiana. For example, in the invoice dated October 13, 2015,[23]

PHI did not identify the following time entries as pertaining to the Indiana litigation:

- "Correspondence with local counsel regarding upcoming telephonic conference with court in Indiana action."

- "Participation in conference call with Indiana court and working on discovery requests to defendants and reviewing subsequent minute order."

In the invoice dated November 30, 2015,[24] PHI did not identify the following time entry as pertaining to the Indiana litigation:

- "Discussions regarding settlement negotiations and court-ordered requirements in Indiana action."
-
In the invoice dated August 31, 2016,[25] PHI did not identify the following time entry as pertaining to the Indiana litigation:

- "Assisting with preparation of response to motion for summary judgment in Indiana action."

Therefore, this Court concludes that PHI failed to identify all of the time entries relating solely to PHI's litigation against Rolls-Royce in Indiana.

Apical also pointed out that various time entries not highlighted in red by PHI (and therefore not indicating that they were attributable to the litigation of the Indiana

---

[23]     Rec. Doc. 289-1 at 69.

[24]     Rec. Doc. 289-1 at 71.

[25]     Rec. Doc. 289-1 at 94.

action) had relevance only to the Indiana litigation. For example, FAG Aerospace manufactured the No. 2 bearing that was installed in the helicopter's engine and failed, causing the helicopter to land in the Gulf. PHI took the corporate deposition of FAG Aerospace but did not deduct from its claimed attorneys' fees the amount spent preparing for and taking FAG Aerospace's deposition. This deposition was relevant only to PHI's claim against Rolls-Royce, the engine manufacturer. Similarly, PHI retained an expert, Gerhard Fuchs, who was deposed in the Indiana case but whose testimony was not relevant to the issues presented in the Louisiana litigation. PHI did not deduct from its claimed attorneys' fees the amount spent preparing for and taking his deposition. PHI also incurred attorneys' fees in connection with investigating an NTSB report involving a different helicopter that experienced a similar engine failure. This was relevant only to the Indiana litigation, but PHI did not deduct the fees attributable to this from its claimed attorneys' fees.

This Court accordingly concludes that Apical's calculation of the attorneys' fees incurred by PHI in the Indiana litigation[26] is more reliable and adopts that calculation as its own. Therefore, this Court finds that PHI failed to identify all of the

---

[26] Apical calculated this figure at $146,930.00 and highlighted the relevant time entries in red (both dark red and light red) on an exhibit submitted in support of its briefing (Rec. Doc. 292-1) and summarized these deductions on another exhibit (Rec. Doc. 292-2). This Court's arithmetic resulted in a one dollar in Apical's favor. This difference is likely the result of rounding.

attorneys' fees attributable to the work performed by PHI's counsel in the Indiana litigation, and further finds that PHI was charged $146,931.00 for time that had to do only with PHI's claim against Rolls-Royce. These fees are highlighted in dark red and light red and dated before May 1, 2017 (the date of the settlement of PHI's claim against Rolls-Royce) on Rec. Doc. 292-1. This Court finds that the amount of $146,931.00 should be deducted from PHI's claimed attorneys' fees.

Third, Apical argued that PHI failed to exercise billing judgment by failing to deduct from the amount sought to be recovered in duplicative and vaguely worded time entries that do not appear to be relevant to PHI's redhibition claim against Apical. "While a party is free to employ multiple attorneys, that party's opponent is not required to pay for duplicative work by those attorneys – it remains the burden of the party seeking fees to demonstrate the reasonableness of all the fees it seeks."[27] Furthermore, "[t]he determination of whether the applicant's reported hours are repetitive and duplicative is a finding of fact by the district court. . . ."[28]

Apical noted that there are 116 time entries in PHI's invoices with an identical description, reading as follows: "Review file materials and documents produced with

---

[27]    *Jolie Design & Decor, Inc.*, No. 15-0740, 2016 WL 4708210, at *4 (E.D. La. Aug. 11, 2016).

[28]    *Riley v. City of Jackson, Miss.*, 99 F.3d 757, 760 (5th Cir. 1996).

respect to responding to various briefing-related matters." Apical noted 104 time entries in PHI's invoices with an identical description, reading as follows: "Work on matters related to expert reports and supporting documentation." Apical noted 28 time entries in PHI's invoices with an identical description, reading as follows: "Work on discovery, motion, and case preparation matters; conference with client and opposing counsel; continue refinement of case strategy."[29] Apical also pointed out other, less numerous duplicative time entries. Apical calculated that these time entries represent $85,826.00 in attorneys' fees. However, Apical did not argue that PHI's claim should be reduced by that amount; arguing instead that some deduction should be made for these vague and duplicative time entries. This Court agrees and, exercising its discretion, finds that two percent of the total invoice amount, or the sum of $12,996.08 should be deducted from PHI's claimed attorneys' fees to account for these vague entries.

Fourth and in a similar vein, Apical noted that several of PHI's time entries were redacted, resulting in an inability to determine whether the time entries pertain to PHI's redhibition claim against Apical. Apical argued that the attorneys' fees

---

[29]     This Court additionally notes that on eleven days in June 2014, Mr. Cunningham had time entries, all with the identical wording, reading as follows: "Review Order from court, develop strategy for moving forward in light of court opinion." (Rec. Doc. 289-1 at 56-58). He billed a total of eight hours at the rate of $330 per hour, or a total of $2,640.00 for these entries. However, Apical included all of those time entries in time related solely to the severance and transfer issue, and this time was excluded from the fee calculation.

attributable to these time entries should be deducted from PHI's recovery. This Court agrees. Some of the redactions appear to have no effect on the validity of the time entry, for example: "Email and phone conference with client re [redaction]; continue drafting supplemental motion re remand; draft affidavit for same."[30] Other redactions, however, made it impossible for this Court to discern whether the time spent by the attorney or paralegal had anything to do with PHI's redhibition claim against Apical. For example, there are 43 time entries reading as follows: "Correspondence regarding [redaction.]"[31] Other similarly but not identically worded time entries appear throughout the invoices. This Court finds that it cannot award attorneys' fees based on such vague time entries. Rather than calculating out the dollar value of each redacted time entry, this Court will exercise its discretion and finds that a one percent reduction, or a total sum of $6498.04, is appropriate.

Fifth, Apical argued that PHI's proposed ten percent deduction for its work on its claims against OHS failed to fully account for the attorneys' fees PHI incurred with regard to its products liability claim against Apical before that claim was dismissed, its redhibition claim against Rolls-Royce before that claim was transferred

---

[30]     Rec. Doc. 289-1 at 20 (BPR's time entry for 3/22/13).

[31]     Rec. Doc. 289-1 at 19, 20, 23, 24, 30, 34 (twice), 38, 42, 43, 47, 51, 54, 56, 67, 74, 79, 87, 90 (twice), 92, 99, 102, 103 (twice), 108 (three times), 112, 114 (twice), 115, 117, 119 (twice), 125 (twice), 128, 130, 131 (twice), 135, 153.

to Indiana, and its breach of contract claim against OHS that went to trial in Louisiana. This Court agrees but notes the difficulty in separating out the billing entries for each individual claim, particularly since PHI's claims against Apical and OHS were jointly tried to a jury. "A prevailing litigant may not recover for hours devoted solely to claims against other parties. But when claims against multiple parties share a 'common core of facts' or 'related legal theories,' a fee applicant may claim all hours reasonably necessary to litigate those issues."[32] In other words, "[a] court need not segregate fees where the facts and issues are so closely interwoven" that they cannot be separated.[33]

In this case, the facts were interwoven but separate legal theories were espoused by PHI as to each of the three defendants. Therefore, this is not the type of case in which the facts and issues are so interwoven that no allowance should be made in calculating the fees; however, the difficulty in doing so leads this Court to resort to a percentage-based calculation, such as the one suggested by PHI in its fee petition. However, this Court finds that the ten percent deduction proposed by PHI is too small while the fifty percent deduction proposed by Apical is too large. This

---

[32]     *Louisiana Power & Light Co. v. Kellstrom*, 50 F.3d 319, 327 (5th Cir. 1995) (citations omitted).

[33]     *Mota v. University of Tex.*, 261 F.3d 512, 528 (5th Cir.2001) (citing *Abell v. Potomac Ins. Co. of Illinois*, 946 F.2d 1160, 1169 (5th Cir. 1991) ("Where time spent on unsuccessful issues is difficult to segregate, no reduction of fees is required.").

Court finds, instead, that a twenty percent deduction is more appropriate, given that there were three defendants, a different theory of recovery as to each defendant, and a successful jury trial only as to Apical.

Sixth, Apical argued that the billing rates charged by PHI's attorneys and paralegals were excessive. This Court disagrees. "Reasonable hourly rates 'are to be calculated according to the prevailing market rates in the relevant community.'"[34] The highest billing rates charged by PHI's counsel were the $350 per hour charged for Mr. Cunningham's time and the $300 per hour charged for his associate attorney Alex Whitman's time in recent months. The highest billing rate charged by their paralegal Jodi Jesser was $165 per hour. Based on the evidence presented concerning rates in this community, the rates charged by PHI's attorneys and paralegals, were not so out of line as to require a reduction by this Court.[35]

Finally, Apical argued that PHI is not entitled to a prospective award of attorneys' fees for amounts that might be incurred on appeal. This Court agrees. Louisiana law permits a successful redhibition plaintiff to request an award of additional attorneys' fees from the appellate court "when the defendant appeals and

---

[34]    *McClain v. Lufkin Indus., Inc.*, 649 F.3d 374, 381 (5th Cir. 2011) (quoting *Blum v. Stenson*, 465 U.S. 886, 895-96 (1984)).

[35]    Rec. Doc. 300-1.

-23-

obtains no relief on appeal."[36]  Any award of prospective attorneys' fees would be purely speculative and not based on any empirical date. Consequently, any such award would not be reasonable and should not be awarded.  Accordingly, at this time, PHI's request for prospective attorneys' fees is premature and will not be granted.

To recap, this Court calculates the appropriate amount of attorneys' fees to be awarded to PHI and against Apical as follows:

| | |
|---|---|
| Total attorneys' fees | $649,804.00 |
| Less venue dispute fees | 105,924.50 |
| Less Indiana litigation fees | 146,931.00 |
| Less 2% deduction for vague entries | 12,996.08 |
| Less 1% deduction for redacted entries | 6498.04 |
| Subtotal | 377,454.38 |
| 20% deduction regarding OHS | 75,490.88 |
| Total Attorneys' Fee Award | $301,963.50 |

The parties agreed to allow the Court to determine the value of the attorneys' fees to be awarded to PHI because of its successful redhibition claim against Apical, to be applied in addition to the jury's award.  Based on the analysis and calculations

---

[36]     *Reeves v. Great Atlantic & Pac. Tea Co., Inc.*, 370 So.2d 202, 212 (La. App. 3 Cir.), *writ denied*, 371 So.2d 835 and 372 So.2d 568 (1979).

set forth above, this Court concludes that $301,963.50 should be added to the jury's award as attorneys' fees recovered by PHI from Apical.

Judgment will be entered accordingly.

Signed at Lafayette, Louisiana on this 25th day of April 2018.

_____
PATRICK J. HANNA
UNITED STATES MAGISTRATE JUDGE