# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF LOUISIANA
# LAFAYETTE DIVISION

| | |
|---|---|
| PHI, INC. | CIVIL ACTION NO. 6:13-cv-00015 |
| VERSUS | MAGISTRATE JUDGE HANNA |
| APICAL INDUSTRIES, INC., ET AL. | BY CONSENT OF THE PARTIES |

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

By consent of the parties pursuant to 28 U.S.C. § 636(c), this matter came before the Court for trial by jury starting on November 13, 2017 and concluding on November 15, 2017. The case involves a helicopter that belonged to PHI, Inc. (PHI) that ditched in the Gulf of Mexico after sustaining an engine failure. The pilot successfully landed in the water with the floats fully deployed. After a period of time, one of the floats deflated and the helicopter capsized. PHI sued the engine manufacturer, Rolls Royce, the float manufacturer, Apical Industries, Inc. (Apical), and a company that performed maintenance and repair on the float system, Offshore Helicopter Support Services, Inc. (OHS). The claim against Rolls Royce was severed and transferred to the Southern District of Indiana by virtue of a forum selection clause where it was settled prior to trial. The remainder of the case was tried in this venue. This Court ruled that evidence regarding the cause of the engine failure was not admissible.

The jury found that the helicopter was a total loss and awarded damages against Apical for the total market value of the helicopter. OHS was exonerated. That verdict has not yet been reduced to judgment because, by agreement of the parties, this Court was called upon to determine the amount of offset to the jury's verdict for the value of the engine and/or the cost to repair the engine prior to the helicopter capsizing assuming it could have been successfully recovered.

An evidentiary hearing was held on January 18, 2018 at which PHI introduced evidence from two expert witnesses concerning the cost of repairs to the engine had the helicopter not capsized and the engine not been immersed in salt water, as well as the value of the engine assuming it was a total loss. Apical contends that the Court should not consider the cost of repairs assuming the engine had not been immersed in salt water because PHI had previously taken the position in its litigation with Rolls Royce that the engine was a total loss regardless of whether it was immersed.[1] Therefore, PHI is bound by that position and should not be allowed take a different position at this point. Apical also put forth evidence by expert testimony as to its computation of the value of the engine.

---

[1] The Court notes at this juncture, as set forth below, that the evidence as to alleged defects in the engine itself and extensive evidence concerning the cause of the failure was set forth in both the Indiana litigation and this case. However, none of that evidence was put before the jury at trial nor was any of that evidence introduced at the evidentiary hearing although some evidence and pleadings were attached to pleadings filed in support of the post-trial hearing.

The Court, having carefully considered the testimony of all of the witnesses, the exhibits entered into evidence, the record, the memoranda submitted by the parties, and the applicable law, now makes the following findings of fact and conclusions of law as required by Rule 52 of the Federal Rules of Civil Procedure. To the extent any conclusion of law is deemed to be a finding of fact, it is adopted as such. Likewise, to the extent any finding of fact is deemed to be a conclusion of law, it is adopted as such.

## **FINDINGS OF FACT**

On December 1, 2011, the engine in a Bell 407 helicopter owned by PHI failed, causing the pilot to make a forced emergency landing in the Gulf of Mexico. The pilot successfully engaged the float system and landed in the water. Both the pilot and the passenger were able to successfully exit the helicopter in life rafts and were recovered without injury. Some period of time passed with the helicopter afloat and secured to an offshore supply vessel by a line. At some point, one of the float bags deflated and the helicopter capsized, resulting in complete immersion in salt water of the engine and various electronics. Notwithstanding anything else to the contrary, the lengthy immersion in salt water would have rendered the helicopter a total loss.

The engine was a Series 250-C47B engine manufactured by Rolls Royce. Both parties agree that its value new was six hundred fifteen thousand dollars

($615,000.00). PHI took the legal and factual position in the litigation against Rolls Royce, complete with expert testimony, that design and manufacturing defects in the engine rendered the engine a total loss regardless of whether the helicopter capsized.[2] Apical cannot be liable for any damage to an engine that was already a total loss when the float system failed.

Given PHI's position and the speculative nature of assuming that the helicopter could have been successfully recovered without further damage to the engine had it not capsized, the Court finds that the cost of repair assuming the helicopter did not capsize is not relevant.

Apical presented the testimony of aviation appraisal expert Richard Hart. Mr. Hart has had experience with valuing and selling the Series 250 engine 40 to 50 times in the past. The Court found his testimony credible and also found that his methodology based on three different publications with proprietary databases that are publicly available was reliable. Utilizing what he described as a modified sales approach to the appraisal of the engine, Mr. Hart valued the engine based on its remaining life after deductions for the cost of operating and a core value, to be four hundred fifty thousand two hundred thirty dollars ($450,230.00).

---

[2] Rec. Docs. 281-1, p. 4, 281-2, p. 5 and Ex. 1 to Rec. Doc. 281-2.

PHI presented the testimony of Sharon Desfor, an expert in appraisal of engines, to counter that of Mr. Hart. Ms. Desfor's expertise was somewhat more limited than Mr. Hart as she generally deals with the aircraft she appraises as a whole rather than just the engine. Ms. Desfor utilized a market/sales comparison approach after having determined that the cost approach would have resulted in an excessive value. She valued the engine at three hundred seventy-five thousand dollars ($375,000.00) before submersion. Part of the approach Ms. Desfor took to arrive at this figure was based on a quote she received from a transaction in 2011 between two other companies. That quote indicated a sales price for a used helicopter with no time since overhaul and one with 50% operational time since overhaul. The Court finds that the methodology followed by Mr. Hart was more reliable and, therefore, does not accept the appraised value of the engine set forth by Ms. Desfor.

## **CONCLUSIONS OF LAW**

The plaintiff's recovery against Apical was based on the jury's finding that the float system contained a redhibitory defect which caused PHI's aircraft to capsize, resulting in a total loss of the aircraft. The jury awarded the fair market value of the aircraft to PHI, however, in a redhibition claim the plaintiff's damages are "limited to only those damages 'caused by' the redhibitory defect, and not those damages

attributable to other causes." *Hollybrook Cottonseed Processing, LLC v. Carver, Inc.,* 2011 WL 2214936, at *3 (W.D.La. June 6, 2011) (citing La. Civ. Code art. 1994).

The evidence is undisputed that the helicopter engine failed prior to the helicopter ditching in the Gulf. PHI has taken the position in pleadings filed in the Indian litigation against Rolls Royce that the engine was a total loss regardless of whether the helicopter capsized. "Normally, factual assertions in pleadings and pretrial orders are considered to be judicial admissions conclusively binding on the party who made them." *White v. ARCO/Polymers, Inc.,* 720 F.2d 1391, 1396 (5th Cir. 1983); *Morales v. Dep't. of Army,* 947 F.2d 766, 769 (5th Cir. 1991); *McCreary v. Richardson,* 738 F.3d 651, 659 n.5 (5th Cir. 2013) ("Factual statements in the pleadings constitute binding judicial admissions"); *Johnson v. Houston's Restaurant, Inc.,* 167 F. App'x. 393, 395 (5th Cir. 2006). Therefore, PHI is bound to its factual assertions that the engine was a total loss before the float failure. As a result, Apical cannot be liable for the market value of the engine as the redhibitory defect found by the jury did not cause that damage.

In addition, the assertion that the helicopter could have been recovered without further damage to the engine is speculative given the sea conditions, the time involved between ditching and recovery, and the possibility that the helicopter could have inverted even in the absence of a float failure.

The parties agreed to allow the Court to determine the value of the engine to apply as an offset to the jury's award. Based on the fair market value as determined by Apical's expert, the Court concludes that $450,230.00 should be deducted from the jury's award as that amount of damages was not caused by the redhibitory defect.

Judgment will be entered accordingly.

Signed at Lafayette, Louisiana on this 25th day of April, 2018.

_____
PATRICK J. HANNA
UNITED STATES MAGISTRATE JUDGE