UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

| | |
|---|---|
| PHI, INC. | CIVIL ACTION NO. 6:13-cv-00015 |
| VERSUS | MAGISTRATE JUDGE HANNA |
| APICAL INDUSTRIES, INC., ET AL. | BY CONSENT OF THE PARTIES |

**MEMORANDUM RULING**

Currently pending is defendant Apical Industries, Inc.'s renewed motion for judgment as a matter of law and alternative motion for a new trial on liability. (Rec. Doc. 307). The motion is opposed. Oral argument was heard on August 23, 2018. Considering the evidence, the law, and the arguments of the parties, and for the reasons fully explained below, the motion is DENIED.

**BACKGROUND**

On December 1, 2011, a helicopter owned by the plaintiff, PHI Inc., was forced to make an emergency landing in the Gulf of Mexico after its engine failed. The helicopter was equipped with an emergency flotation system, which the pilot deployed before successfully landing the helicopter in the water. The pilot and sole passenger safely exited the helicopter. After a period of time, one of the floats deflated, and the helicopter capsized.

PHI sued the engine manufacturer, Rolls-Royce Corporation; the float manufacturer, Apical Industries, Inc.; and the company that performed maintenance

and repair served on the float system, Offshore Helicopter Support Services, Inc. ("OHS"). The claim against Rolls-Royce was severed and transferred to the Southern District of Indiana, and settled before trial. The claims against Apical and OHS were tried to a jury in this venue. Before trial, this Court ruled that evidence regarding the cause of the engine failure was not admissible at the trial of the remaining claims.

During the trial at the close of the plaintiff's case, Apical made an oral motion for judgment as a matter of law under Rule 50(a), which was denied. Thereafter, the jury found that the float contained a redhibitory defect and that the redhibitory defect caused PHI's damages. The jury further found that the helicopter was a total loss and awarded damages against Apical for the total market value of the helicopter. The jury exonerated OHS. Following the jury trial, two other issues were tried to the bench, and this Court determined the amount of offset to the jury's verdict for the value of the engine and the amount of attorneys' fees to be recovered by PHI's counsel due to their successful prosecution of the redhibition claim against Apical. The rulings were reduced to judgment.

## THE CONTENTIONS OF THE PARTIES

Apical is dissatisfied with the judgment and now seeks either judgment as a matter of law under Fed. R. Civ. P. 50(b) or a new trial on liability issues under Fed. R. Civ. P. 59(a). More particularly, Apical contends that PHI failed to meet its evidentiary

2

burden of proof on two of the elements of its redhibition claim, arguing that PHI failed to establish that there was a defect in the float or that any such defect was the proximate cause of the helicopter's overturning in the Gulf of Mexico. Apical further contends that a new trial is warranted because the jury's verdict is contrary to the weight of the evidence and was tainted by legally erroneous and factually incorrect statements made by PHI's counsel during the rebuttal portion of his closing argument. PHI contends, to the contrary, that sufficient evidence to support the jury's verdict was presented at trial and that Apical waived any objection to the statements made during closing arguments by failing to object at the time.

## LAW AND ANALYSIS

### A. THE RULE 50(B) STANDARD

The same standard applies to motions for judgment as a matter of law asserted during a jury trial under Rule 50(a) and to post-verdict motions under Rule 50(b).[1] Such a motion may be granted when a reasonable jury would not have a legally sufficient evidentiary basis to find for a party on that issue.[2] When a district court evaluates a Rule 50(b) motion, the court must be "especially deferential" to the jury's

---

[1] *Nobach v. Woodland Village Nursing Center, Inc.*, 799 F.3d 374, 377 (5th Cir. 2015).

[2] Fed. R. Civ. P. 50(a); *Hurst v. Lee County, Miss.*, 764 F.3d 480, 483 (5th Cir. 2014); *Nobach v. Woodland Village Nursing Center, Inc.*, 799 F.3d at 377.

3

verdict,[3] and the "jury verdict must stand unless there is a lack of substantial evidence, in the light most favorable to the successful party, to support the verdict."[4] Accordingly, the question for the court to decide "is whether the state of proof is such that reasonable and impartial minds could reach the conclusion the jury expressed in its verdict."[5] Judgment as a matter of law should be granted only when the facts and inferences point so strongly and overwhelmingly in the movant's favor that jurors could not reasonably have reached a contrary verdict.[6]

**B.  THE RULE 59(A) STANDARD**

Rule 59(a) states that a new trial may be granted after a jury trial "for any reason for which a new trial has heretofore been granted in an action at law in federal court." A new trial may be granted if the jury's verdict was against the great weight of the evidence, the damages awarded were excessive, the trial was unfair, or some prejudicial error was committed during the trial.[7] As with a Rule 50(b) motion, the

---

[3] *Janvey v. Dillon Gage, Incorporated of Dallas*, 856 F.3d 377, 385 (5th Cir. 2017); *Abraham v. Alpha Chi Omega*, 708 F.3d 614, 620 (5th Cir. 2013).

[4] *Am. Home Assurance Co. v. United Space Alliance, LLC*, 378 F.3d 482, 487 (5th Cir. 2004).

[5] *Liberty Mut. Ins. Co. v. Falgoust*, 386 F.2d 248, 253 (5th Cir. 1967)).

[6] *Brown v. Sudduth*, 675 F.3d 472, 477 (5th Cir. 2012); *Brennan's Inc. v. Dickie Brennan & Co., Inc.*, 376 F.3d 356, 362 (2004).

[7] *Smith v. Transworld Drilling Co.*, 773 F.2d 610, 613 (5th Cir. 1985); *Conway v. Chem. Leaman Tank Lines, Inc.*, 610 F.2d 360, 363 (5th Cir. 1980).

court must view the evidence "in the light most favorable to the jury verdict,"[8] and a "trial court should not grant a new trial on evidentiary grounds unless the verdict is against the great weight of the evidence."[9] The great weight of the evidence is a higher standard than a preponderance of the evidence,[10] and is "not easily met."[11] The decision to grant or deny a motion for a new trial is within the sound discretion of the trial court.[12]

### C. SUFFICIENT EVIDENCE SUPPORTED THE JURY'S FINDING THAT THE FLOAT HAD A REDHIBITORY DEFECT

Seizing upon the elements to support a claim of redhibition, Apical argued, first, that the trial record contained no evidence that the floats contained a *redhibitory* defect. Apical concedes that the proper jury instruction was given but contends the jury erred because there was no evidence that the defect rendered the thing useless or its use so inconvenient it would not have been purchased. This Court disagrees. Evidence was presented at trial showing that Apical's failure to install a doubler rendered the float defective and that this defect was not apparent to PHI. This evidence included, but was

---

[8] *Seidman v. Am. Airlines, Inc.*, 923 F.2d 1134, 1140 (5th Cir. 1991).

[9] *Dotson v. Clark Equipment Co.*, 805 F.2d 1225, 1227 (5th Cir. 1986).

[10] *Pagan v. Shoney's, Inc.*, 931 F.2d 334, 336 (5th Cir 1991).

[11] *Scott v. Monsanto Co.*, 868 F.2d 786, 789 (5th Cir.1989).

[12] *Pryor v. Trane Co.*, 138 F.3d 1024, 1026 (5th Cir. 1998).

5

not limited to, the 2006 Service Instruction Letter issued by Apical addressing the need for a doubler on the aft floats in its float systems – a Service Instruction Letter PHI could not locate in any of its files according to Mr. Yakubovich.  Likewise, the testimony indicated that neither OHS nor PHI was made aware of the existence or purpose for a doubler despite the presence of a doubler on the float located on the opposite side of the aircraft. Mr. Yakubovich testified he was not aware that the installation of the doubler was a manufacturing addition rather than a repair item.

The Letter was generated when Apical discovered the rear door passenger step on the aircraft could rub against the float during deployment and create a hole and thus the potential for deflation. The testimony, photographs and physical evidence introduced at trial supported the plaintiff's theory that rubbing of the step on the float without the doubler created a hole in the float at the point of contact with the step. [See Rec. Doc. 273, pp. 111-113, Doc. 274, Ex. 5].The float with the doubler did not deflate.  Thus, the jury was entitled to conclude that the lack of a doubler was a defect. Further, the testimony by Mr. Yakubovich indicated that had PHI (or OHS) been aware of the problem created by the step and the manufacturer's recommendation for the doubler to address that problem, the doubler would have been installed to maintain compliance with PHI's certification of airworthiness.  PHI had never lost an aircraft due to an incident such as this, thus the jury could also conclude that the failure to

install the doubler recommended by Apical did render the use of the float so inconvenient that PHI would not have purchased that float without the doubler. The Court notes at this juncture that the foreperson of the jury specifically underlined the word "redhibitory" on the verdict form.

Based on the evidence presented at trial, this Court finds that reasonable and impartial minds could reach the conclusion the jury expressed in its verdict, particularly when that evidence is viewed in a light most favorable to PHI, the prevailing party. Accordingly, Apical's argument lacks merit.

### D. SUFFICIENT EVIDENCE SUPPORTED THE JURY'S FINDING THAT THE REDHIBITORY DEFECT CAUSED THE HELICOPTER TO CAPSIZE

Apical's second argument is that no evidence was presented at trial showing that the lack of a doubler caused the helicopter to overturn in the Gulf. Apical complains about the testimony given by PHI's expert, Doug Stimpson. But Apical had an opportunity to object to Mr. Stimpson's qualifications and methodology before trial and had an opportunity to cross-examine Mr. Stimpson at trial. Apical also put its own expert witnesses on the stand who unsurprisingly had a different opinion from that of Mr. Stimpson. Still, the jury apparently found Mr. Stimpson's opinion to be both credible and persuasive since they expressly found on the verdict form, by a preponderance of the evidence, that the redhibitory defect caused the damage to the

helicopter.

Although there was contradictory evidence in the opinions of the experts, there is sufficient factual evidence through the photographs, the testimony of the crew of the M/V RUSTY EYMARD, the vessel that towed the helicopter to the platform where it was retrieved from the water after it had capsized, that the deflation of the float caused the helicopter to capsize. Mr. Dardar, the captain, testified that he heard a pop when one of the segments of the float failed, the helicopter began rocking, and the helicopter then flipped over into the water. Jared Brunet, the relief captain who secured the towline to the front of the starboard landing skid before the helicopter capsized, testified the float had already begun deflating when he attached the towline and the aircraft capsized after that. Michael Wittman, the deckhand, testified that he was "actively watching" the aircraft after they got the line on the aircraft when the float deflated and the aircraft then rolled over.

While the defendant's expert contradicted the theory that the deflation of the float alone could have caused the helicopter to capsize, and there was evidence that a torn gert where the rear float attached to the skid could have also caused the helicopter to capsize, there was no evidence as to when or how the gert was torn. The towline is depicted in multiple photographs as being attached to the very front of the landing skid and the jury could reasonably conclude that it had nothing to do with the torn gert and

8

that the gert was torn when the helicopter capsized [See Rec. Doc. 273 – attachment , Doc. 274 – attachments 1, 3]. While there were some inconsistencies between the testimony of the vessel crewmembers, the four things that were completely consistent are that the helicopter landed safely in the water, after a significant period of time in which the aircraft was floating level, the float without the doubler began to deflate (which would suggest the gert was not torn in the landing), the vessel never came into contact with the aircraft and not long after the float deflated, the aircraft capsized.

Based on the evidence presented at trial, this Court finds that reasonable and impartial minds could reach the conclusion that the jury expressed in its verdict, particularly when that evidence is viewed in a light most favorable to PHI, the prevailing party. Accordingly, Apical's argument lacks merit.

### E.  ANY DEFICIENCY IN THE CLOSING ARGUMENT WAS EITHER WAIVED OR CURED

Apical's final argument is that a new trial is warranted because PHI's attorney, in the rebuttal portion of his closing argument, made prejudicial misrepresentations of the governing law and facts. Apical contends that PHI's counsel stated that the term "redhibitory defect" refers to any product defect and stated that the purpose of the float system was to assist in recovering the helicopter after a water landing. Apical maintains that these statements are legally erroneous and factually inaccurate.

"A district court may order a new trial if improper closing argument irreparably prejudices a jury verdict or if a jury fails to follow instructions."[13] However, Apical did not quote from the record any particular statements that PHI's counsel allegedly made. Therefore, it is not totally clear precisely what statements Apical is referring to. This is important because a closing statement must be reviewed in context. The propriety of closing argument is examined reviewing the entire argument within the context of the court's rulings on objections, the jury charge, and any corrective measures applied by the trial court.[14] When that is done in this case, the inescapable conclusion is that a new trial is not necessary.

To begin with, it is axiomatic that the arguments of counsel are not evidence, and the jury in this case was expressly instructed that the arguments of counsel were not evidence. Juries are presumed to follow the instructions given to them by the judge presiding over the trial,[15] and Apical presented no evidence in an effort to show that the jury did not follow instructions in this case. Therefore, Apical has not established that anything said by PHI's counsel in his closing argument was considered by the jury

---

[13] *Nissho-Iwai Co., Ltd. v. Occidental Crude Sales, Inc.*, 848 F.2d 613, 619 (5th Cir. 1988).

[14] *Nissho-Iwai Co., Ltd. v. Occidental Crude Sales, Inc.*, 848 F.2d at 619 (citing *Westbrook v. General Tire & Rubber Co.*, 754 F.2d 1233, 1238 (5th Cir.1985) (per curiam)).

[15] *Richardson v. Marsh*, 481 U.S. 200, 211 (1987); *United States v. Tarango*, 396 F.3d 666, 677 (5th Cir. 2005); *Wellogix, Inc. v. Accenture, L.L.P.*, 716 F.3d 867, 876 (5th Cir. 2013).

to be evidence and therefore crucial to the jury's decision-making process.

Second, Apical waived this argument by failing to object at trial. No evidence was presented in an attempt to establish that a contemporaneous objection to the alleged statements by PHI's counsel was made during counsel's closing argument. Absent a contemporaneous objection, any complaint concerning the content of a closing statement is waived. As the Fifth Circuit has stated, a litigant is barred from urging improper closing argument as the grounds for a new trial after the jury has already returned its verdict.[16] Therefore, there is no basis for Apical's objection to the closing argument at this late date.

Third, this Court properly instructed the jury on redhibition, curing any deficiency that might have arisen from any misrepresentations of the law that might have been stated by PHI's counsel during his closing argument. Thus, viewing the closing argument in context, it is clear that Apical's arguments lack merit.

Accordingly, this Court finds that any impropriety on the part of PHI's counsel in his closing argument was either cured by the court's jury instructions or waived by Apical's failure to object contemporaneously.

## CONCLUSION

---

[16] *Nissho-Iwai Co., Ltd. v. Occidental Crude Sales, Inc.*, 848 F.2d at 619. See, also, *Brown & Root, Inc. v. Big Rock Corp.*, 383 F.2d 662, 667 (5th Cir. 1967).

For the foregoing reasons,

IT IS ORDERED that defendant Apical Industries, Inc.'s renewed motion for judgment as a matter of law and alternative motion for a new trial on liability. (Rec. Doc. 307) is DENIED.

Signed at Lafayette, Louisiana on this 27th day of August 2018.

_____
PATRICK J. HANNA
UNITED STATES MAGISTRATE JUDGE