UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

PHI, INC.                                    CIVIL ACTION NO. 6:13-cv-00015

VERSUS                                       MAGISTRATE JUDGE HANNA

APICAL INDUSTRIES, INC., ET AL.    BY CONSENT OF THE PARTIES

## MEMORANDUM RULING

A jury trial was originally scheduled for November 16, 2020 pursuant to remand from the Fifth Circuit Court of Appeals. The trial was to be devoted solely to the issue of whether the defendant, Apical Industries, Inc., can be solidarily liable with the severed former defendant, Rolls-Royce Corporation, against whom the case proceeded in the Southern District of Indiana, for the damages awarded by the jury to the plaintiff, PHI, Inc., in this litigation. Due to the court's Ninth Supplemental Order Regarding Court Operations Under the Exigent Circumstances Created by the Covid-19-Pandemic, which prohibited jury trials in the Western District of Louisiana before the end of 2020, however, the trial date was upset and has not yet been rescheduled.  As part of the opinion, the Fifth Circuit stated "[b]ecause the magistrate judge has made no findings relevant to these [choice of law] considerations and the parties have not briefed nor submitted evidence pointing to the laws of any state other than Louisiana for PHI's substantive claims, we proceed

on the assumption that Louisiana law applies to these claims."[1] The Fifth Circuit also intimated "no view" on any "legal rulings the magistrate judge may deem necessary to pass upon on remand."[2] Thus, and with nothing but the utmost respect for the Fifth Circuit, after much thoughtful consideration and a detailed review of all the evidence and records in the cases here and in Indiana, this Court deemed it necessary to test the assumption that Louisiana law applies to the loss allocation between Apical and Rolls-Royce. Having received full briefing from the parties and oral argument on the choice-of-law analysis, and after a full review of the record and evidence in this court and the district court for the Southern District of Indiana, and with a thorough effort to reconcile all rulings from the Indiana court and the Fifth Circuit, this Court now finds that Indiana law applies to liability for consequential damages as well as to the apportionment of loss as between Rolls-Royce and Apical, precluding the applicability of solidary liability under the facts of this case.

## Factual Background

The following facts are undisputed. On December 1, 2011, the engine in a helicopter owned by PHI malfunctioned, forcing the pilot to make an emergency landing in the Gulf of Mexico. The pilot activated the helicopter's emergency

---

[1]     *PHI, Inc. v. Apical Industries, Inc.,* 946 F.3d 772, 776 n. 8 (5th Cir. 2020).

[2]     *PHI, Inc. v. Apical Industries, Inc.,* 946 F.3d at 779-80.

flotation system, and the helicopter landed upright in the water. The pilot and passenger escaped the helicopter on life rafts without injury. The helicopter floated for a period of time before the right aft float deflated as the helicopter was being towed to a nearby oil production platform. After the float deflated, the helicopter capsized, rendering the helicopter a total loss.

## PHI's Claims

This lawsuit began in December 2012 when PHI filed suit against Rolls-Royce Corporation, Apical Industries, Inc., and Offshore Helicopter Support Services, Inc. ("OHS") in Louisiana state court.  With the consent of Rolls-Royce, Apical and OHS removed the action, and it was determined that this court has subject-matter jurisdiction under 28 U.S.C. § 1332.[3]

PHI alleged that the helicopter's engine was manufactured by defendant Rolls-Royce, that the engine contained one or more redhibitory defects, and that the defects – including but not limited to the engine's No. 2 bearing – caused the engine failure that necessitated the emergency water landing and resulted in the loss of the helicopter. PHI alleged that the helicopter's float system was designed, manufactured, and sold by defendant Apical, that the float system contained redhibitory defects, and that the defects in the float system resulted in the helicopter

---

[3]        Rec. Doc. 53.

inverting into the saltwater of the Gulf of Mexico, resulting in the loss of the helicopter. PHI further alleged that OHS repaired, reworked, and overhauled the flotation system, that OHS's negligence in doing so caused the flotation system to fail, and that OHS's negligence resulted in the loss of the helicopter. In its amended complaint, PHI deleted the negligence claim against OHS and asserted a breach of contract claim against OHS in its place.

### The Limited Warranty

PHI specifically – but not exclusively – alleged that the helicopter's engine failed due to a problem with the No. 2 bearing. The No. 2 bearing on the helicopter at the time of the crash was a replacement part that PHI had purchased from Rolls-Royce. A limited warranty on the No. 2 bearing was issued by Rolls-Royce at the time of its purchase. The limited warranty reads as follows, in pertinent part:

> THIS WARRANTY IS GIVEN EXPRESSLY AND IN PLACE OF ALL OTHER WARRANTIES, EXPRESS OR IMPLIED, INCLUDING ANY IMPLIED WARRANTIES OF MERCHANTABILITY OR FITNESS FOR PARTICULAR PURPOSE. THERE ARE NO UNDERSTANDINGS, AGREEMENTS, REPRESENTATIONS, OR WARRANTIES NOT SPECIFIED HEREIN.[4]
>
> * * * * *
>
> The obligations of Rolls-Royce under this Limited Warranty are limited to the repair of the spare module/part as provided herein. In no event, whether as a result of breach of contract or warranty, alleged negligence, or otherwise, shall Rolls-Royce be subject to liability for

---

[4]      Rec. Doc. 106-5 at 1.

4

incidental, consequential, indirect, special or punitive damages of any kind. . . .[5]

\* \* \* \* \*

This Limited Warranty shall be construed and interpreted in accordance with the laws of the State of Indiana, without reference to its choice of law rules. . . . Any controversy or claim arising out of or relating to this Limited Warranty or breach thereof shall be litigated only in the Circuit or Superior Courts of Marion County, Indiana or the United States District Court for the Southern District of Indiana, Indianapolis Division. . . .[6]

## **Severance and Transfer**

In July 2013, Rolls-Royce filed a motion to dismiss or, alternatively, to transfer the action to the Southern District of Indiana,[7] based on the forum selection clause in the limited warranty. The motion was denied as premature.[8]

After the United States Supreme Court decided *Atlantic Marine Construction, Inc. v. United States District Court for the Western District of Texas*, 571 U.S. 49 (2013), Rolls-Royce filed a motion seeking severance of PHI's claim against it and transfer of that claim to Indiana.[9] Finding that enforcement of the forum selection clause in Rolls-Royce's limited warranty would, under the facts of this case, be

---

[5]     Rec. Doc. 106-5 at 2.

[6]     Rec. Doc. 106-5 at 3.

[7]     Rec. Doc. 62.

[8]     Rec. Doc. 79.

[9]     Rec. Doc. 106.

unfair, unjust, and unreasonable, the motion was denied.[10] Rolls-Royce then filed a petition for mandamus to the Fifth Circuit, which was granted, and PHI's claim against Rolls-Royce was severed and transferred to the United States District Court for the Southern District of Indiana, Indianapolis Division.[11]

## **The Indiana Litigation**

After PHI's claim against Rolls-Royce was severed and transferred to Indiana, Rolls-Royce filed a motion for summary judgment, which was granted in part and denied in part in December 2016.[12] In support of the motion, Rolls-Royce argued that it was entitled to summary judgment for three reasons:  because the limited warranty for the No. 2 bearing excluded Rolls-Royce's potential liability for the loss of the helicopter, because the economic loss doctrine barred PHI's claims, and because the destruction of PHI's helicopter was due to a superseding cause (the failure of the float system).

The court explained that PHI was pursuing a breach of warranty claim against Rolls-Royce under Indiana law.[13] The court then held that, because the doctrine of

---

[10]     Rec. Docs. 132, 141, 142.

[11]     *In re Rolls Royce Corporation*, 775 F.3d 671 (5th Cir. 2014).

[12]     *Petroleum Helicopters, Inc. v. Rolls Royce Corp.*, No. 1:15-cv-00840-TWP-DML, 2016 WL 7179362 (S.D. Ind. Dec. 9, 2016), reconsideration denied, 2017 WL 167722 (S.D. Ind. Jan. 17, 2017).

[13]     *Petroleum Helicopters, Inc. v. Rolls Royce Corp.*, 2016 WL 7179362 at *3.

economic loss applies only in the context of tortious injury while PHI's claim against Rolls-Royce was contractual in nature, summary judgment in favor of Rolls-Royce on that issue was warranted.[14]

Rolls-Royce argued that the failure of the flotation system was an unforeseen superseding cause that led to the loss of the helicopter, while PHI argued that the foreseeability of its helicopter capsizing following a water landing was an issue of fact for the jury to resolve. The court agreed with PHI and found that there was a genuine issue of material fact precluding summary judgment in Rolls-Royce's favor regarding the doctrine of superseding cause.[15]

Three separate issues were addressed regarding the limited warranty:  the scope of the warranty, whether the warranty failed in its essential purpose, and whether the warranty was unconscionable. While Rolls-Royce argued that it was not liable to PHI because the limited warranty for the No. 2 bearing disclaimed any implied warranties for merchantability and gave PHI its exclusive remedy, i.e. repair of the bearing itself, PHI argued that the limited warranty did not foreclose all of its claims against Roll-Royce because the engine also contained an alleged design defect that was not subject to the limited warranty. The court recognized that PHI's amended complaint articulated a claim based on defects in the engine's manufacture

---

[14]     *Petroleum Helicopters, Inc. v. Rolls Royce Corp.*, 2016 WL 7179362 at *5.

[15]     *Petroleum Helicopters, Inc. v. Rolls Royce Corp.*, 2016 WL 7179362 at *5-6.

or design that included but were not limited to the No. 2 bearing. Thus, the court held that "because the Limited Warranty applies only to the No. 2 bearing, a genuine issue of material fact remains regarding whether the engine contained a design defect."[16] The court denied summary judgment in Rolls-Royce's favor on this issue.

PHI alternatively argued that, even if the limited warranty applied to the entire engine, the limited warranty was inapplicable because it failed in its essential purpose. The court noted that whether a limited remedy (such as the limited warranty at issue in this case) fails of its essential purpose is an issue of fact that a jury may determine.[17] PHI argued that the limited warranty failed to serve its essential purpose because the total loss of the engine prevented any repair that might have been made to the No. 2 bearing, while Rolls-Royce argued that, under Indiana law, an exclusion of consequential damages is valid even if the written warranty fails of its essential purpose, citing *Rheem Mfg. Co. v. Phelps Heating & Air Conditioning, Inc*., 746 N.E.2d 941, 947 (Ind. 2001). In light of these competing arguments, the Indiana court found that a genuine issue of material fact existed regarding whether the limited warranty failed to serve its essential purpose and denied summary judgment in Rolls-Royce's favor on that issue.[18]

---

[16]     *Petroleum Helicopters, Inc. v. Rolls Royce Corp*., 2016 WL 7179362 at *4.

[17]     *Petroleum Helicopters, Inc. v. Rolls Royce Corp*., 2016 WL 7179362 at *4.

[18]     *Petroleum Helicopters, Inc. v. Rolls Royce Corp*., 2016 WL 7179362 at *5.

PHI also argued that the limited warranty was unconscionable because it was unilaterally drafted by Roll-Royce without any negotiations with PHI. The court noted that unconscionability is a matter of law to be determined by the court.[19] The court was persuaded by Rolls-Royce's arguments that both PHI and Rolls-Royce are sophisticated parties, that there was no disparity in bargaining power between them, and that PHI was a longstanding customer of Rolls-Royce that was familiar with the terms of the limited warranty and had used it to its benefit on prior occasions. The court found that the limited warranty was not unconscionable and granted summary judgment in Rolls-Royce's favor on that issue.[20]

In summary, the Indiana court found "that the pertinent sections of the Limited Warranty are conscionable; however, there is a genuine issue of material fact regarding whether the engine contained a design defect and whether the Limited Warranty meets its essential purpose, and there remains a genuine issue of material fact as to the superseding cause defense; therefore, these issues should be resolved by the trier of fact."[21]

---

[19]   *Petroleum Helicopters, Inc. v. Rolls Royce Corp.*, 2016 WL 7179362 at *5.

[20]   *Petroleum Helicopters, Inc. v. Rolls Royce Corp.*, 2016 WL 7179362 at *5.

[21]   *Petroleum Helicopters, Inc. v. Rolls Royce Corp.*, 2016 WL 7179362 at *6.

Rolls-Royce sought reconsideration of the ruling, which the court denied.[22] In the reconsideration ruling, the Indiana court expressly found that Rolls-Royce knew or should have known that PHI's redhibition claim under Louisiana law would convert to an implied warranty of merchantability claim under Indiana law.[23]

The same day it ruled on the motion for reconsideration, the Indiana court also ruled on the parties' motions in limine.[24] Having already found that the limited warranty was conscionable and that there was no dispute that the limited warranty excluded any consequential or incidental damages arising from the failure of the No. 2 bearing, the court granted Rolls-Royce's request to exclude at trial any evidence of incidental and consequential damages caused by the No. 2 bearing.[25] Having previously found that a material issue of fact remained regarding whether a defect in the engine caused PHI's loss, the court denied Rolls-Royce's request for the exclusion of evidence at trial regarding incidental and consequential damages caused by a defect in any part of the engine other than the No. 2 bearing.[26]

---

[22]   *Petroleum Helicopters, Inc. v. Rolls Royce Corp.*, No. 1:15-cv-00840-TWP-DML, 2017 WL 167722, at *5 (S.D. Ind. Jan. 17, 2017).

[23]   *Petroleum Helicopters, Inc. v. Rolls Royce Corp.*, 2017 WL 167722 at *4.

[24]   *Petroleum Helicopters, Inc. v. Rolls Royce Corp.*, No. 1:15-cv-00840, 2017 WL 189158 (S.D. Ind. Jan. 17, 2017).

[25]   *Petroleum Helicopters, Inc. v. Rolls Royce Corp.*, 2017 WL 189158 at *5.

[26]   *Petroleum Helicopters, Inc. v. Rolls Royce Corp.*, 2017 WL 189158 at *5.

Soon thereafter, PHI and Rolls-Royce amicably settled their dispute.[27]

## Consent

In August 2017, the parties consented to have the undersigned Magistrate Judge preside over this matter pursuant to 28 U.S.C. § 636(c).[28]

## This Court's Pretrial Rulings

This Court issued several pretrial rulings, two of which are particularly important to the analysis presently before the Court. First, from the beginning it was undisputed that the helicopter sustained an engine failure and the pilot made a successful emergency landing in the water with the float system fully deployed, giving time for the pilot and passenger to escape and for the helicopter to be placed in tow by a nearby vessel. Some time later, the float system failed, and the helicopter inverted. This Court reasoned that Apical's float system was designed to work only in the event that an emergency water landing was necessary, i.e., as a result of an engine failure over water; therefore, how or why the engine malfunctioned was immaterial to the issues of whether there was a redhibitory defect in the float system or whether OHS's alleged breach of contract led to the failure of the float system

---

[27]    Rec. Doc. 275 in Civil Action No. 1:15-cv-00840 (notice of settlement filed on March 6, 2017).

[28]    Rec. Docs. 212, 213.

11

that caused the helicopter to invert.[29] If the jury found the float system did not have a redhibitory defect *that caused the helicopter to invert*, then Apical could not be liable for anything. Regardless, this Court concluded, as did the Indiana court before it, that Apical could not be liable for the failure of the engine. For that reason, this Court did not permit any evidence at the trial concerning the *cause of the engine failure*.[30]

In response to the argument that Apical would be entitled to have the jury consider comparative fault principles and tort-based liability theories, this Court found that only contract claims remained in this case and that comparative fault principles would not apply to any party or non-party.[31] Furthermore, since Apical and OHS were only potentially liable for the loss of the helicopter minus the engine, based on the applicability of Indiana law in the Indiana litigation, combined with the undisputed facts concerning the successful water landing and deployment of the float system, this Court found that Rolls-Royce was not solidarily liable with Apical or OHS because (a) tort based principles were not applicable, and (b) under traditional principles of Louisiana's obligations law concerning contract or quasi-contract,

---

[29]     See also the Fifth Circuit's statement in the remand opinion that "the cause for the engine's failure is not relevant to the Float System's functionality and purpose." *PHI, Inc. v. Apical Industries Inc.,* 946 F.3d at 779 n. 13.

[30]     Rec. Doc. 256 at 5-7.

[31]     Rec. Doc. 256 at 9-10.

Rolls-Royce would not be liable for the same performance as Apical and OHS. Therefore, the jury would not be asked to apportion liability as between Rolls-Royce and any other defendant, and the defendants (if found liable to PHI) would not be entitled to a fifty percent credit against the jury's verdict for the settlement between PHI and Rolls-Royce.[32]

### Trial

PHI's claims against Apical and OHS were tried to a jury in November 2017. The jury found that Apical's float system contained a redhibitory defect that caused the loss of the helicopter, found that OHS did not breach any contractual duty owed to PHI, and awarded damages in the amount of $2.18 million in favor of PHI and against Apical.[33]

### Post-Trial Rulings

### A.    The Value of the Engine

Following an evidentiary hearing with this Court held in January 2018 by agreement of the parties, this Court decided that $450,230 should be deducted from the jury's award, representing the fair market value of the helicopter's engine.[34] This Court found that the evidence was undisputed that the helicopter engine failed before

---

[32]    Rec. Doc. 256 at 12-13.

[33]    Rec. Doc. 277.

[34]    Rec. Doc. 303 at 7.

the helicopter's emergency landing in the Gulf of Mexico. This Court recognized that PHI took the position in pleadings filed in the Indiana litigation that the engine was a total loss regardless of whether the helicopter capsized and found that PHI was bound to its factual assertions that the engine was a total loss before the float system failure. This Court consequently concluded that Apical could not be liable for the value of the engine because the redhibitory defect in the float system that was found by the jury did not cause the damage to the engine that occurred before the helicopter landed in the water.

**B.**      **Attorneys' Fees**

Because PHI's redhibition claim against Apical was successful, this Court awarded PHI $301,963.50 in attorneys' fees in April 2018.[35]

## The Remand Ruling

Apical appealed the trial court's judgment and related orders. The Fifth Circuit issued its mandate in January 2020, expressly remanding this matter for a trial on the issue of whether there is solidary liability under Louisiana law between Rolls-Royce and Apical.[36]

The parties agree that, as to the loss allocation between Apical and Rolls-Royce, Apical has the burden of proof on remand and would go first at trial. Apical

---

[35]      Rec. Doc. 302 at 24-25.

[36]      *PHI, Inc. v. Apical Industries, Inc.*, 946 F.3d at 773.

argued that this is so because a non-settling defendant may only obtain a proportionate reduction in damages by proving at trial that the party that settled was solidarily liable.[37] PHI argued, more persuasively, that whether Rolls-Royce and Apical are solidarily liable was raised as an affirmative defense by Apical, and the defendant asserting an affirmative defense must bear the burden of proving that defense.[38]

Apical argued that the Fifth Circuit was requiring it to prove only that the engine contained a defect unrelated to the No. 2 bearing that caused the engine to fail and further argued that it was not required to prove that any such defect caused the loss of the helicopter.[39] This Court disagrees regardless of the outcome of the choice-of-law analysis as set forth in detail below.

In the remand ruling, the Fifth Circuit expressly assumed that Louisiana law applies to all of the issues presented in this case, but also noted, first, that the trial court had made no findings concerning what law applied and, second, that the parties had not briefed that issue or submitted any evidence suggesting that the law of any

---

[37]     In support of this argument, Apical cited *Taylor v. U.S. Fidelity & Guar. Ins. Co*., 630 So.2d 237, 239 (La. 1993).

[38]     *Geophysical Service, Inc. v. TGS-NOPEC Geophysical Co.*, 784 Fed. App'x 253, 256 (5th Cir. 2019); *Lulirama Ltd., Inc. v. Axcess Broadcast Services, Inc*., 128 F.3d 872, 884 (5th Cir. 1997); *Fontenot v. Upjohn Co*., 780 F.2d 1190, 1194 (5th Cir. 1986)

[39]     Rec. Doc. 349 at 8-9.

state other than Louisiana applied.[40] The only issues before the court prior to the appeal were PHI's redhibition claim against Apical and PHI's breach of contract claim against OHS, both of which were based on Louisiana law. PHI's claim against Rolls-Royce – including both the claim based on the No. 2 bearing that was subject to the limited warranty and the claim based on other parts of the engine – had been severed and transferred to Indiana, and this Court had ruled that Rolls-Royce's liability, if any, was not relevant to the issues that remained to be adjudicated in Louisiana. Therefore, there was no reason for conducting a choice-of-law analysis at that time.

On remand, however, the Fifth Circuit is "require[ing] a trial on whether Rolls-Royce is also responsible for the loss of the helicopter such that it is a solidary obligor, along with Apical, entitling Apical to a reduction in the amount of damages it owes to PHI."[41] Because PHI's claim against Rolls-Royce was governed by Indiana law in the Indiana proceeding, and the Fifth Circuit has ordered this Court to determine whether Rolls-Royce is liable for the loss of PHI's helicopter, the issue of which state's law should apply is now squarely before the court.

---

[40]     *PHI, Inc. v. Apical Industries, Inc.*, 946 F.3d at 776 n. 8.

[41]     *PHI, Inc. v. Apical Industries, Inc.*, 946 F.3d at 779.

## Which State's Law Applies

This Court has subject-matter jurisdiction under 28 U.S.C. § 1332 because, at the time of removal, the parties were diverse in citizenship and the amount in controversy exceeded the statutory minimum. When sitting in diversity, as this Court is, a federal court applies the substantive law of the state in which the court sits, including the forum state's choice-of-law rules.[42] The Indiana court applied Indiana law to all of PHI's claims against Rolls-Royce when those claims were pending in Indiana. Should Indiana law apply now that PHI's claim against Rolls-Royce must be adjudicated in this forum or should Louisiana law apply? This Court required the parties to brief this issue,[43] they did so,[44] and oral argument on this issue was held on September 23, 2020. PHI argued in favor of the application of Indiana law, while Apical argued in favor of the application of Louisiana law.

### A.      The Arguments of the Parties

Apical presented five arguments in favor of the application of Louisiana law: that the same law should be applied to the remaining claim against Rolls-Royce as

---

[42]     *In re Katrina Canal Breaches Litigation*, 495 F.3d 191, 206 (5th Cir. 2007) (citing *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938); *Klaxon Co. v. Stentor Elec. Mfg. Co*., 313 U.S. 487, 496 (1941)); *Abraham v. State Farm Mut. Auto. Ins. Co*., 465 F.3d 609, 611 (5th Cir. 2006) (citing same).

[43]     Rec. Doc. 359.

[44]     Rec. Docs. 361, 364.

17

was applied to PHI's claim against Apical at the trial on the merits; that PHI should be judicially estopped from arguing that Indiana law applies because it previously argued in Indiana that Louisiana law should be applied to its claim against Rolls-Royce; that Louisiana law should be applied because solidary liability is an affirmative defense available under Louisiana law that was raised in this proceeding to which Louisiana law was applied at trial on the merits; that there is no true conflict between Indiana breach of warranty law and Louisiana redhibition law; and that if there is a true conflict between Indiana law and Louisiana law, Louisiana law should be applied. PHI argued that Apical waived its solidary liability defense because it was raised too late and further argued that Indiana law should apply to the issue of loss allocation as between Rolls-Royce and Apical.

## B.   <u>**Should the Law Applied at the First Trial be Applied Again**</u>?

Apical argued that the same law should be applied to the remaining claim against Rolls-Royce as was applied to PHI's claim against Apical at the trial on the merits. As no choice-of-law analysis had been undertaken at that point, it is possible that a choice of law analysis resulting in the application of Louisiana law to at least some of the issues would have been done if the claim against Rolls-Royce had not

been severed and transferred to Indiana.[45] However, severance of the claim against Rolls-Royce on the basis of the choice-of-law provision included in the limited warranty document required that Rolls-Royce be treated differently from Apical. Inherent in the Fifth Circuit's severance and transfer order was recognition that the two claims were separate, distinct, and sufficiently independent legally and factually to be tried in two different states under two different sets of laws.

Apical also noted that this Court did not apply California law to PHI's claim against it. Even though Rolls-Royce raised the applicability of Indiana law, Apical never raised the applicability of California law before trial. Therefore, whether California law should be applied is an issue that cannot be raised at this late date.[46]

Apical also failed to note that this Court took Rolls-Royce's role in this litigation into consideration by decreasing the jury's award in favor of PHI by an amount equal to the value of helicopter's engine as the loss caused by the engine failure. The jury found that the redhibitory defect in the Apical float caused the loss of the helicopter and awarded PHI $2.18 million, the full value of the helicopter including its engine. But, as specifically found by the Indiana court, "due to defects

---

[45]     Louisiana recognizes the concept of dépeçage, under which a conflict-of-laws analysis is applied on a claim-by-claim or issue-by-issue basis, not to the case as a whole. La. Civ. Code art. 3515, Comment (d).

[46]     The Court also notes that the Fifth Circuit stated in the remand opinion that Apical's liability cannot be relitigated. *PHI, Inc. v. Apical Industries, Inc.* 946 F.3d at 789 n. 13.

in Rolls-Royce's engine, the engine itself was a total loss despite the capsizing of the helicopter."[47] The Fifth Circuit also implicitly found as much when it recognized in its remand opinion that "only Rolls-Royce could have been liable for the helicopter's engine failure."[48] Because the engine failed before the helicopter was forced to land in the water, this Court likewise reasoned that the *redhibitory defect in the float did not cause the loss of the engine*. Thus, this Court deducted the sum that was determined to be the value of the engine – $450,230 – from the jury's award.

PHI persuasively argued that since the Court has, in essence, compensated Apical for the loss caused by any and all defects in the Rolls-Royce engine by reducing the jury's award by the value of the engine, it would be unfair to allow any further reduction in PHI's recovery. At a minimum, PHI argued that if the Court were to allow Rolls-Royce's allocation of loss to be considered, the value of the engine should be added back to the jury's award. However, three different courts have now concluded that Apical cannot be liable for the value of the engine despite the fact that there is evidence in this record that the engine could possibly have been repaired had the helicopter not inverted.[49] This poses the question of whether the

---

[47]     *Petroleum Helicopters, Inc. v. Rolls Royce Corp.*, 2016 WL 7179362 at 6.

[48]     *PHI, Inc. v. Apical Industries, Inc.* 946 F.3d at 778.

[49]     See Rec. Docs. 282-1, 282-2 at 2 (deposition testimony of PHI's Director of Engine Overhaul, Mike Block).

conclusion that Apical cannot be liable for the value of the engine, considering that the jury found Apical liable for the loss of the helicopter including the engine, should be revisited at trial. That would seemingly only be the case if the Louisiana law of solidary liability applied because a fundamental precept of solidary liability between obligors in a contractual or quasi-contractual context is that each can be held liable for the full amount of the obligation, i.e. the total loss of the helicopter, and the obligee (PHI) has the right to demand the "whole performance from any of his solidary obligors."[50]

## C.   **Should PHI be Judicially Estopped from Seeking the Application of Indiana Law?**

Apical argued that PHI should be judicially estopped from arguing that Indiana law applies because it previously argued in Indiana that Louisiana law should be applied to its claim against Rolls-Royce. Judicial estoppel "prevents a party from asserting a position in a legal proceeding that is contrary to a position previously taken in the same or some earlier proceeding."[51] The doctrine is usually applied when a party uses intentional self-contradiction to obtain an unfair

---

[50]      Cf. La. Civ. Code arts. 1790, 1794, and 1795.

[51]      *Hall v. GE Plastic Pacific PTE Ltd.*, 327 F.3d 391, 396 (5th Cir. 2003) (citing *Ergo Science, Inc. v. Martin*, 73 F.3d 595, 598 (5th Cir. 1996)).  See, also, *New Hampshire v. Maine*, 532 U.S. 742, 749 (2001).

advantage.[52] Judicial estoppel applies when (1) the party asserted a legal position that is plainly inconsistent with its prior position; (2) a court accepted the prior position; and (3) the party did not act inadvertently.[53] To reiterate, before a party can be estopped on this basis, that party must have convinced a court to accept its previous position.[54] In this case, however, PHI failed to convince the Indiana court that Louisiana law should be applied to any of its claims against Rolls-Royce (or to any issues within those claims). PHI asserted a breach of warranty claim under Indiana law based on the language of the limited warranty for the No. 2 bearing, and the Indiana court clearly acknowledged that PHI's engine defect claim not involving the No. 2 bearing under Louisiana's redhibition doctrine converted to an implied warranty of merchantability claim under Indiana law.[55] Therefore, PHI is not judicially estopped from asserting, in this lawsuit, that Indiana law rather than Louisiana law should apply to the allocation of loss as between Rolls-Royce and Apical.

---

[52]     *In re Coastal Plains, Inc*., 179 F.3d 197, 206 (5th Cir. 1999).

[53]     *United States v. Farrar*, 876 F.3d 702, 709 (5th Cir. 2017); *Trinity Marine Prods., Inc. v. United States*, 812 F.3d 481, 490 (5th Cir. 2016); *Reed v. City of Arlington*, 650 F.3d 571, 574 (5th Cir. 2011).

[54]     *Hall v. GE Plastics Pac. PTE Ltd*., 327 F.3d at 396.

[55]     *Petroleum Helicopters, Inc. v. Rolls Royce Corp*., 2016 WL 7179362 at 2 n. 2; Rec. Doc. 248 at 9 in Civil Action No. 1:15-cv-00840; *Petroleum Helicopters, Inc. v. Rolls Royce Corp*., 2017 WL 167722, at *4.

D.   **Should Louisiana Law Apply Because Solidary Liability is a Louisiana Affirmative Defense?**

Apical argued that Louisiana law should be applied because solidary liability is an affirmative defense available under Louisiana law that was raised in this proceeding to which Louisiana law was applied at trial on the merits. Because no choice of law argument or analysis was presented before trial, that argument begs the question and does not assist this Court in determining which state's law should be applied now.

E.   **Was the Timing of the Solidary Liability Defense Prejudicial?**

PHI argued that Apical's solidary liability defense was waived because it was not raised timely and PHI was prejudiced by the delay.  Rule 8(c) of the Federal Rules of Civil Procedure requires parties to set forth any matter constituting an affirmative defense in their responses to the plaintiff's complaint, and the failure to assert an affirmative defense at that time generally results in a waiver of the defense.[56] However, when an affirmative defense "is raised in the trial court in a manner that does not result in unfair surprise. . . technical failure to comply precisely with Rule 8(c) is not fatal."[57] An affirmative defense is not waived "if it is raised at a pragmatically sufficient time, and [the opposing party] was not prejudiced in its

---

[56]   *Allied Chem. Corp. v. Mackay*, 695 F.2d 854, 855 (5th Cir. 1983) (per curiam).

[57]   *Allied Chem. Corp. v. Mackay*, 695 F.2d at 855-56.

ability to respond."[58] Consistently, the Fifth Circuit has "found no waiver where no evidence of prejudice exists and sufficient time to respond to the defense remains before trial,"[59] explaining that "[t]his is consistent with the Supreme Court's interpretation of the purpose of Rule 8(c), which is to give the opposing party notice of the affirmative defense and a chance to argue why it should not apply."[60]

In this case, Apical did not assert a defense based on its alleged solidary liability with Rolls-Royce in its answers to PHI's original or amended complaints.[61] Apical raised this defense for the first time in the parties' joint proposed pretrial order which was filed on October 6, 2017, almost five years after the lawsuit was filed and only thirty-seven days before the trial began.[62] A joint pretrial order signed by both parties supersedes all pleadings and governs the issues to be presented at trial.[63] In other cases, the Fifth Circuit has found that an affirmative defense raised

---

[58]   *Standard Waste Sys. Ltd. v. Mid-Continent Cas. Co.*, 612 F.3d 394, 398 (5th Cir. 2010) (quoting *Rogers v. McDorman*, 521 F.3d 381, 386 (5th Cir. 2008)).

[59]   *Pasco ex rel. Pasco v. Knoblauch*, 566 F.3d 572, 577 (5th Cir. 2009).

[60]   *Pasco ex rel. Pasco v. Knoblauch*, 566 F.3d at 577-78 (citing *Blonder-Tongue Lab. v. Univ. of Ill. Found.*, 402 U.S. 313, 350 (1971)).

[61]   See Rec. Docs. 14, 26, 56.

[62]   Rec. Doc. 231 at 4-5.

[63]   *Vanhoy v. United States*, 514 F.3d 447, 450 n.10 (5th Cir. 2008) (quoting *McGehee v. Certainteed Corp.*, 101 F.3d 1078, 1080 (5th Cir. 1996)).

24

for the first time in the pretrial order was raised "at a pragmatically sufficient time."[64] But there is a critical second part to the inquiry. A defendant's failure to raise an affirmative defense in its answer to the plaintiff's complaint need not result in a waiver if the defense is otherwise raised in a pragmatically sufficient time *and* the plaintiff is not prejudiced in his ability to respond.[65] "Central to requiring the pleading of affirmative defenses is the prevention of unfair surprise."[66] "A party is not prejudiced if he can adequately confront and defend against the defense."[67] A district court has discretion to determine whether the party against whom the defense was raised suffered prejudice or unfair surprise as a result of the delay in asserting

---

[64]     See, e.g., *Motion Medical Technologies, L.L.C. v. Thermotek, Inc.*, 875 F.3d 765, 772 (5th Cir. 2017); *Villafranca v. United States*, 587 F.3d 257, 262 n. 2 (5th Cir. 2009) (citing *Vanhoy v. United States*, 514 F.3d at 450-51); *Arismendez v. Nightingale Home Health Care, Inc.*, 493 F.3d 602, 611 (5th Cir. 2007); *Lubke v. City of Arlington*, 455 F.3d 489, 499 (5th Cir. 2006); *Giles v. Gen. Elec. Co.*, 245 F.3d 474, 492 (5th Cir. 2001); *Lucas v. United States*, 807 F.2d 414 (5th Cir. 1986); *Allied Chem. Corp. v. Mackay*, 695 F.2d at 855-56; *Funding Systems Leasing Corp. v. Pugh*, 530 F.2d 91, 95-96 (5th Cir. 1976).

[65]     For cases finding waiver due to prejudice, see, e.g., *Imperium IP Holdings (Cayman), Ltd. v. Samsung Electronics Co., Ltd.*, 203 F.Supp.3d 755, 760 (E.D. Tex. 2016); *LSREF2 Baron, L.L.C. v. Tauch*, 751 F.3d 394, 402 (5th Cir. 2014); *Ingraham v. United States*, 808 F.2d 1075, 1079 (5th Cir. 1987).

[66]     *Ingraham v. United States*, 808 F.2d at 1079.

[67]     *Graham v. Hamilton*, 872 F.Supp.2d 529, 542 (W.D. La. 2012) (citing *Lucas v. United States*, 807 F.2d 414, 418 (5th Cir. 1986) and *Theunissen v. GSI Group*, 109 F.Supp.2d 505, 509 (N.D. Miss. 2000)).

25

the defense.[68] "Whether there was unfair surprise or prejudice is a fact-specific inquiry based on the circumstances of the case."[69]

In this case, PHI argued that it was prejudiced by Apical's late assertion of the solidary liability defense because it settled its claim against Rolls-Royce after the Indiana court ruled that Indiana law applied to all of PHI's claims against Rolls-Royce and before the affirmative defense based on Louisiana law was asserted. PHI settled its claim against Rolls-Royce in March 2017,[70] more than seven months before it knew that Apical would be claiming that it was entitled to a fifty percent reduction in any recovery PHI might be awarded at trial because Apical was solidarily liable with Rolls-Royce. At the time of the settlement, PHI had not been given an opportunity to confront or defend against the solidary liability defense, and PHI was lacking critical information that could very likely have affected its settlement negotiations with Rolls-Royce. Not having been privy to any of the issues surrounding the settlement between PHI and Rolls-Royce, this Court is unable to conclude that PHI was *not* prejudiced by Apical's delayed assertion of the solidary liability defense. However, any *potential* prejudice to PHI should have been cured

---

[68]   *Levy Gardens Partners, L.P. v. Commonwealth Land Title Ins. Co*., 706 F.3d 622, 633 (5th Cir. 2013).

[69]   *LSREF2 Baron, L.L.C. v. Tauch*, 751 F.3d at 402.

[70]   Rec. Doc. 275 in Civil Action No. 1:15-cv-00840 (notice of settlement filed on March 6, 2017).

by deducting the amount allocated to the value of the engine from any award the jury imposed against Apical based on the factual findings of the Indiana court, with which this Court agreed, that the Apical float system failure and subsequent inversion did not cause the loss of the engine.

## F.    The Conflict-of-Laws Analysis

Apical argued that there is no true conflict between Indiana law pertaining to the breach of the implied warranty of merchantability and Louisiana redhibition law. Apical alternatively argued that if there is a true conflict between Indiana law and Louisiana law, Louisiana law should be applied.  PHI argued that Indiana law should apply to the issue of loss allocation as between Rolls-Royce and Apical. By reconciling the rulings of the Indiana court and the Fifth Circuit's mandamus ruling with a complete conflict-of-laws analysis, this Court finds that it does not completely agree with either party.

The first step in a conflict-of-laws analysis under Louisiana law requires the court to determine whether the laws of two or more states conflict.[71] If the laws of the relevant states do not conflict, no conflict-of-laws analysis is necessary, and the

---

[71]    *Lonzo v. Lonzo*, 17-0549 (La. App. 4 Cir. 11/15/17), 231 So. 3d 957, 966.  See, also, La. Civ. Code art. 3515, Comment (d); *Tolliver v. Naor*, 115 F.Supp.2d 697, 701 (E.D. La. 2000) (whether there is an actual conflict of law is a threshold matter).

court applies the law of the forum state.[72]  If the laws do conflict, however, further analysis is necessary.

In this case, there are two potential conflicts of law.  First, the court must decide which state's law applies to Rolls-Royce's potential liability to PHI for the alleged defect in the engine. That analysis necessarily includes the issue of causation. Second, the court must decide which state's law applies to the issue of whether Rolls-Royce and Apical are solidarily liable to PHI. The same state's law need not apply to both of these issues.[73]

When there is an actual conflict of laws, Louisiana Civil Code Article 3515 – Louisiana's general and residual rule – requires that the law to be applied is "the law of the state whose policies would be most seriously impaired if its law were not applied to that issue."[74] That general rule is reiterated in Article 3537 with specific applicability to contractual obligations and in Article 3541 with specific applicability to quasi-contractual obligations such as those arising from a breach of warranty or in redhibition. Article 3537 provides guidance on how to determine which state's

---

[72]     *Mumblow v. Monroe Broadcasting, Inc.*, 401 F.3d 616, 620 (5th Cir. 2005).

[73]     See, e.g., *Lonzo v. Lonzo*, 231 So.3d at 968 (noting that Louisiana's choice-of-law rules recognize the concept of "dépeçage" or issue-by-issue analysis as per Civil Code Article 3515). See, also, *Rigdon v. Pittsburgh Tank & Tower Co., Inc.*, 95-2611 (La. App. 1 Cir. 11/08/96), 682 So.2d 1303, 1306 ("courts must utilize an issue-by-issue analysis which may result in laws of different states being applied to different issues in the same dispute.").

[74]     La. Civ. Code art. 3515.

policies would be most seriously impaired if its law were not applied, reading as follows:

> That state is determined by evaluating the strength and pertinence of the relevant policies of the involved states in the light of: (1) the pertinent contacts of each state to the parties and the transaction, including the place of negotiation, formation, and performance of the contract, the location of the object of the contract, and the place of domicile, habitual residence, or business of the parties; (2) the nature, type, and purpose of the contract; and (3) the policies referred to in Article 3515, as well as the policies of facilitating the orderly planning of transactions, of promoting multistate commercial intercourse, and of protecting one party from undue imposition by the other.

## 1.   Which State's Law Applies to Rolls-Royce's Potential Liability to PHI?

PHI originally styled its claim against Rolls-Royce as a redhibition claim under Louisiana law. After the claim was severed and transferred to Indiana, however, the Indiana court noted that the claim converted into a claim for breach of the implied warranty of merchantability under Indiana law.  The Indiana court said:

> [T]he Court finds that Rolls Royce knew (or should have known) that PHI's redhibition claim under Louisiana's doctrine could convert to an implied warranty of merchantability claim under Indiana law. It is undisputed that Indiana does not recognize the redhibition doctrine and, not only did Rolls Royce move to transfer and sever PHI's redhibition claim from Louisiana to Indiana, but in 2015 after the case transferred to Indiana, Rolls Royce specifically reported to the Court and PHI that Indiana law applies to this case.[75]

---

[75]   *Petroleum Helicopters, Inc. v. Rolls Royce Corp.*, 2017 WL 167722, at *4.

There is no indication in the Indiana court's rulings that it intended to apply Indiana law only to the extent that PHI was claiming that the engine failed because of the No. 2 bearing and not to the extent that PHI was alternatively claiming that other alleged defects in the engine led to the engine's failure and the water landing. To the contrary, it is clear from the district court's multiple rulings that the Indiana court was prepared to apply Indiana law to all aspects of PHI's claims against Rolls-Royce.[76]  The Indiana court noted that "PHI specifically asserts that Rolls-Royce breached the implied warranty of merchantability. The implied warranty of merchantability requires goods to be 'fit for ordinary purposes for which such goods are used.'"[77]  The Indiana court further noted that "Rolls-Royce argues that the format and language of its Limited Warranty is sufficient to exclude or modify any implied warranty of merchantability."[78] The Indiana court expressly found, however, that the limited warranty applied only to the No. 2 bearing.[79] PHI asserted a claim for breach of the implied warranty of merchantability with regard to the alleged defects in the engine including but not limited to the No. 2 bearing. Therefore, the

---

[76]    See discussion *infra* at pages 6-10 concerning what matters were left for trial in Indiana.

[77]    *Petroleum Helicopters, Inc. v. Rolls Royce Corp.*, 2016 WL 7179362 at *3 (citations omitted).

[78]    *Petroleum Helicopters, Inc. v. Rolls Royce Corp.*, 2016 WL 7179362 at 3.

[79]    *Petroleum Helicopters, Inc. v. Rolls Royce Corp.*, 2016 WL 7179362 at 4.

claim concerning any *other* potential engine defect was not modified in any way by the written limited warranty document issued by Rolls-Royce when the No. 2 bearing was purchased.

Although Rolls-Royce represented in pleadings filed in the Indiana proceeding that an identical limited warranty document was issued by Rolls-Royce when it sold the engine to Bell Helicopter before the engine was installed in the helicopter ultimately sold to PHI,[80] this Court has not located any such warranty document in the record of this lawsuit. Unless the existence of such a warranty document is proven at trial, there is no basis for any limitation on the scope of the implied warranty of merchantability under which PHI sought to recover from Rolls-Royce for defects in the engine unrelated to the No. 2 bearing. Thus, to maintain consistency with the multiple rulings by the Indiana court prior to settlement, PHI, and now Apical as the party with the burden of proof, would be subject to the law of Indiana as to liability for any claims against Rolls-Royce.

---

[80]   "Each engine, engine component, and replacement component part Rolls-Royce sells and PHI acquires comes with a written Limited Warranty." (Rec. Doc. 193 in Civil Action No. 1:15-cv-00840 at p. 3). "Rolls-Royce issues a Limited Warranty. . . with each engine and new replacement part it manufactures and sells." (Rec. Doc. 193 in Civil Action No. 1:15-cv-00840 at p. 7). "Rolls-Royce provides a Limited Warranty with every engine and component part it manufactures and sells. . . ."  (Rec. Doc. 193 in Civil Action No. 1:15-cv-00840 at p. 9). "A Limited Warranty governs each engine and component part PHI obtains from Rolls-Royce. . . ." (Rec. Doc. 193 in Civil Action No. 1:15-cv-00840 at p. 17).

Likewise, the Fifth Circuit severed PHI's claims against Rolls-Royce from PHI's claims against the other defendants and transferred them to Indiana based on the forum selection clause in the limited warranty document for the No. 2 bearing. However, there is no evidence in the Fifth Circuit's mandamus ruling that consideration was given to the fact that PHI had not only alleged that the No. 2 bearing had malfunctioned but had also alleged that other defects in the engine that were not covered by the limited warranty document might have led to the emergency water landing. The warranty document contained a forum selection clause as well as a choice-of-law provision requiring Indiana law to apply, and it was apparently on the basis of the words set forth in that document that the Fifth Circuit severed PHI's claims against Rolls-Royce and transferred those claims to Indiana. Thus, there is nothing in the Fifth Circuit's mandamus ruling to suggest that Louisiana law should apply to determine liability for any of the claims of PHI, and now Apical as the party with the burden of proof, against Rolls-Royce.

The Indiana court indicated that the implied warranty of merchantability under Indiana law is the functional equivalent of the Louisiana warranty against redhibitory defects. With all due respect, that statement is not entirely accurate. Under Indiana law, the implied warranty of merchantability is codified at IC 26-1-2-314. Under subparagraph (2), the statute may be satisfied by showing that the good is not fit for the ordinary purpose for which it was used. Proof of that element can

establish a breach of the warranty and, as the comments and jurisprudence indicate, in addition to showing the warranty and the breach, the buyer must show that *the breach* was a proximate cause of the loss sustained.[81] In other words, to remain consistent with the prior rulings of the Indiana court, under Indiana law, Apical would have to show that there was (a) a defect unrelated to the No. 2 bearing, and (b) that the defect rendered the engine unfit for its ordinary purpose, i.e. the breach. In addition, as set forth in more detail below, Apical would also have to show (c) that the specific breach caused the helicopter to invert because Rolls-Royce has already been found to be solely responsible for the failure of the engine, and therefore, the loss of the engine.

Under Louisiana law, a "seller warrants the buyer against redhibitory defects, or vices, in the things sold."[82] In order to prevail on a redhibition claim, a plaintiff must prove both that the product had a defect and that the defect rendered the thing, in this case the engine, useless or its use so inconvenient that PHI would not have bought the engine had it known of the defect.[83] Under La. Civ. Code Art. 2524, *the general rules of obligations,* i.e. the rules applicable to a breach of contract claim, apply to provide the buyer's remedy if "the seller [Rolls-Royce] has reason to know

---

[81]   *Irmscher Suppliers, Inc. v. Schuler,* 909 N.E.2d 1040, 1048-49 (Ind. Ct. App. 2009).

[82]   La. Civ. Code art. 2520.

[83]   La. Civ. Code art. 2520.

the particular use the buyer intends for the thing [the engine] or the buyer's particular purpose for buying the thing, and that the buyer is relying on the seller's skill and judgment in selecting it, the thing sold must be fit for the buyer's intended use or for his particular purpose." In this regard, Indiana law and Louisiana law would seem to be functionally equivalent. However, as the comments indicate, this article is often confused with redhibition and "[t]he seller's obligation under this Article is *not* the common law warranty of fitness. . . At common law the remedies arising from the warranty of fitness offer quasi-delictual overtones entirely absent from this Article."[84] PHI never pleaded a breach of contract claim under Louisiana law; rather, PHI's claims only sounded in redhibition.

Neither the Indiana doctrine nor the Louisiana doctrine sounds in tort. In fact, the Indiana court expressly recognized that PHI's implied warranty of merchantability claim against Rolls-Royce was not a tort claim, emphasizing that "PHI submits that it is only proceeding against Rolls-Royce on contractual claims."[85] Similarly, redhibition is a quasi-contract doctrine rather than a delictual doctrine.[86]

---

[84]     La. Civ. Code art. 2524, Comments (b) and (c) (emphasis added).

[85]     *Petroleum Helicopters, Inc. v. Rolls Royce Corp.*, 2016 WL 7179362 at 5.

[86]     See, e.g., *Rotorcraft Leasing, LLC v. H.E.R.O.S., Inc.*, 2016-690 (La. App. 3 Cir. 04/19/17), 217 So.3d 525, 535, writs denied, 228 So.3d 745 (La. 10/09/17) ("a redhibition claim is contractual in nature"); *Touro Infirmary v. Sizeler Architects*, 2004-0634 (La. App. 4 Cir. 03/23/05), 900 So.2d 200, 204, writs denied, 901 So.2d 1093 (La. 2005) and 920 So.2d 232 (La. 2006) (quoting *Hostetler v. W. Gray & Co., Inc.*, 523 So.2d 1359, 1368 (La. App. 2 Cir.), writs denied, 531 So.

34

Both principles are designed to shape the conduct of parties in the commercial marketplace, requiring manufacturers and sellers to warrant that their products are not defective and affording a remedy to purchasers who rely on those warranties. Both states require a quasi-contractual warranty from the manufacturer and seller and afford a quasi-contractual remedy to the buyer, which are imposed by operation of law for the protection of the buyer.[87] This is where the similarities in the two state's laws are the closest. However, the potential damages that are available and the causation elements for each in the context of this specific case are different.

A redhibition claim has a causation element.[88] The plaintiff must prove that his injuries were caused by the redhibitory defect; a plaintiff in redhibition cannot recover damages attributable to other causes.[89] Therefore, Apical would have the

---

2d 470 (La. 1988) and 531 So.2d 471 (La. 1988)).  See, also, *Alexander v. Burroughs Corp*., 359 So.2d 607, 612 (La. 1978).

[87]    *Chesaco Motors, Inc., v. Gulf Stream Coach, Inc.,* No. 3:09-cv-383, 2013 WL 1281827 at *3 (N.D. Ind. Mar. 26, 2013) (citing *Frantz v. Cantrell,* 711 N.E.2d 856, 859 (Ind. Ct. App. 1999)); *Aucoin v. Southern Quality Homes, LLC.,* 2007-1014 (La. 02/26/2008), 984 So.2d 685, 691-92 (citing *Young v. Ford Motor Co., Inc.,* 595 So.2d 1123, 1127 (La. 1992)).

[88]    *Hollybrook Cottonseed Processing, LLC v. Carver, Inc*., No. 09-750, 2011 WL 2214936, at *3 (W.D. La. June 6, 2011) ("damages are limited to only those damages 'caused by' the redhibitory defect"); *Weber v. Fidelity & Cas. Ins. Co. of New York*, 250 So.2d 754, 755 (La. 1971).

[89]    *In re Vioxx Products Liability Litigation*, MDL No. 1657, 2010 WL 2649513, at *21 (E.D. La. June 29, 2010) (concluding that the plaintiff's redhibition claim failed because he did not prove causation); *In re Vioxx Products Liability Litigation*, MDL No. 1657, 2010 WL 11570867, at *11 (E.D. La. Mar. 31, 2010) (finding that in order to be successful in a redhibition claim, a plaintiff must prove a theory of causation).

burden of proving that the inversion of the helicopter was caused by a "redhibitory defect" *in the engine* unrelated to the No. 2 bearing under Louisiana law. It should be noted here that this Court instructed the jury on causation, and the jury expressly found that the redhibitory defect *in the float* manufactured by Apical "caused the damage" to the helicopter.[90] Therefore, the jury found that Apical was liable for the loss of the helicopter including the helicopter's engine.[91]

Indiana's implied warranty of merchantability law is statutorily based and generally follows the UCC. Under IC 26-1-2-714, the measure of damages for a breach of warranty is calculated as follows:

(1) Where the buyer has accepted goods and given notification. . ., he may recover as damages for any nonconformity of tender the loss resulting in the ordinary course of events from the seller's breach as determined in any manner which is reasonable.

(2) The measure of damages for breach of warranty is the difference at the time and place of acceptance between the value of the goods accepted and the value they would have had if they had been as warranted, unless special circumstances show proximate damages of a different amount.

(3) *In a proper case any incidental and consequential damages under IC 26-1-2-715 may also be recovered.* (Emphasis added.)

Direct damages include the cost of repair, the fair market value of the goods as warranted minus the salvage value, the fair market value of the goods as warranted at the time of acceptance less the fair market value of the goods as accepted, and the

---

[90]   Rec. Doc. 277.

[91]   Rec. Doc. 277.

replacement costs less the value of the plaintiff's use of the good up to the time of trial.[92] Thus, the value of the engine credited to Apical and charged to PHI as a result of the settlement with Rolls-Royce satisfied the direct damages caused by the engine failure.

Consequential damages are defined in IC 26-1-2-715(2)(b) to include "injury to person or property proximately resulting from any breach of warranty."[93] Consequential damages must be reasonably foreseeable and then are available only if "they are the direct, immediate, and probable result of the breach of an implied warranty."[94] Further, the "consequential damages must result from the seller's breach."[95] Thus, in order for Rolls-Royce to be responsible for the loss of the entire helicopter under Indiana law, the plaintiff, or in this case Apical as the party with the burden of proof, must prove that there was an engine defect other than in the No.

---

[92]    *Irmscher Suppliers, Inc. v. Schuler* 909 N.E.2d at 1050; *Gagne v. Enduramax LLC,* No. 3:11-CV-183-TLS, 2011 WL 6141053 at *3 (N.D. Ind. Dec. 9, 2011).

[93]    The statute also defines incidental damages which are not applicable here.

[94]    See IC 26-1-2-714 and 715 concerning the availability of consequential damages. Consequential damages must be reasonably foreseeable and can be recovered only if they are the "direct, immediate, and probable result of the breach of an implied warranty." *Irmscher Suppliers Inc. v. Schuler,* 909 N.E.2d at 1051 (citing *Bob Anderson Pontiac, Inc. v. Davidson,* 293 N.E.2d 232, 236 (Ind. App. Ct. 1973)); *Gagne v Enduramax LLC,* 2011 WL 6141053 at *3; *Chesaco Motors, Inc v. Gulf Stream Coach, Inc.,* 2013 WL 1281827 at *6.

[95]    *Michiana v. Mack, Inc. v. Allendale Rural Fire Protection District,* 428 N.E.2d 1367, 1372 (Ind. Ct. App. 1981). See, also, *Chesaco Motors, Inc. v. Gulf Stream Coach, Inc.,* 2013 WL 1281827 at *5.

2 bearing that made the engine unfit for its intended use and which directly, immediately, and probably resulted in the helicopter inverting and submerging.

However, as Rolls-Royce argued in Indiana, by statute, the parties are free to limit their exposure with a limited warranty that is designed to specifically protect the manufacturer from the imposition of consequential damages.[96] Apparently, there was no specific evidence to that effect outside of the No. 2 bearing. Absent such a limited warranty, consequential damages *may* be available if the limited warranty failed to serve its essential purpose. According to PHI, this is so because the total loss of the engine prevented any repair that might have been made to the No. 2 bearing. Rolls-Royce argued that, under Indiana law, an exclusion of consequential damages is valid even if the written warranty fails of its essential purpose, citing *Rheem Mfg. Co. v. Phelps Heating & Air Conditioning, Inc*., 746 N.E.2d 941, 947 (Ind. 2001). The Indiana court expressly preserved this issue, as well as consequential damages in general, and the issue of superseding cause for trial.[97]

On the other hand, under the redhibition laws of Louisiana, the manufacturer is responsible for damages simply by virtue of its status as the manufacturer once it is shown that there was a redhibitory defect that existed at the time of delivery that caused the plaintiff's damages. The manufacturer is deemed to know of the

---

[96]    IC 26-1-2-719; *Gagne v. Enduramax, LLC,* 2011 WL 6141053 at*4.

[97]    See discussion *infra* at pages 6-10.

redhibitory defect and cannot be found to be in good faith regardless of what his knowledge may be.[98] Therefore, there is a true conflict of laws when it comes to causation and consequential damages.

Before considering the individual factors necessary to the choice-of-law analysis, based on the comprehensive legislation dealing with the implied warranty of merchantability, this Court finds that Indiana has a strong policy interest in protecting Indiana businesses and ensuring that the contractually and statutorily created rights and obligations of its citizens such as Rolls-Royce are enforced.[99] That policy interest is evidenced by the higher standards for causation for consequential damages found in the statutory law. Louisiana has a strong policy interest in assuring that its corporate citizens are fairly compensated for any losses resulting from defects in products that they purchase in interstate commerce.[100] Furthermore, Louisiana has more limited protection for manufacturers when it comes to causation and damages that can only be avoided with express and explicit waivers.[101] Applying all the

---

[98]    La. Civ. Code arts. 2531, 2545.

[99]    *Breneman v. Slusher*, 768 N.E.2d 451, 461 (Ind. Ct. App. 2002); *Ram Products Co., Inc. v. Chauncey*, 967 F.Supp. 1071, 1081 (N.D. Ind. 1997).

[100]    See *Bell v. Foster Wheeler Energy Corp.*, No. 15-6394, 2017 WL 979023, at *3 (E.D. La. Mar. 13, 2017); *Logan v. Louisiana Dock Co., Inc.*, 541 So.2d 182, 186 (La. 1989); *Guillory on Behalf of Guillory v. U.S.*, 699 F.2d 781, 785 (5th Cir. 1983).

[101]    La. Civ. Code art. 2520, comment (c) and cases cited therein.

factors to these policy interests, this Court concludes that Indiana's interests would be most impaired if Indiana law were not applied to both causation and damages.

The first factor to be considered in determining which state's law applies requires an analysis of the pertinent contacts of each state to the parties and the transaction, including the place of negotiation, formation, and performance of the contract, the location of the object of the contract, and the place of domicile, habitual residence, or business of the parties.

Rolls-Royce primarily does business in its home state, Indiana, while Apical is a California company, and PHI is a Louisiana corporation whose operations headquarters are centered in Louisiana. PHI has airfields at multiple locations in Louisiana and many of its airships stay at offshore locations when not ferrying offshore workers to land. The helicopter that was lost was based in Louisiana and ditched offshore of the coast of Louisiana.

The contract by which the engine was purchased was at least partially negotiated in Indiana by an Indiana company for sale to a third party in Canada (Bell). The helicopter's engine was designed and manufactured in Indiana by an Indiana-based company and was ultimately supplied from Indiana by that Indiana-based corporation through an intermediary (Bell) to an end-user in Louisiana (PHI). Indiana law imposed an implied warranty of merchantability to the end-user in the absence of a contract of sale with an express warranty. The contract of sale for the

No. 2 bearing was negotiated by an Indiana company with a Louisiana company. Because there was a contract of sale for that product manufactured in Indiana, Indiana law allowed the imposition of more limited warranty obligations on Rolls-Royce and afforded a more limited remedy under the express warranty allowed by Indiana statutory law to PHI.

Neither Apical nor OHS had any contact with or involvement with Rolls-Royce or the engine Rolls-Royce manufactured. Apical manufactured the float and OHS maintained it. Thus, neither of these two parties has any role in the analysis at this stage. In seeking to be held solidarily liable with Rolls-Royce, Apical is essentially seeking contribution for one-half of the jury award from the party with which it claims to be solidarily liable.  Since Rolls-Royce is no longer in the case, however, Apical stands in PHI's shoes, subrogated to PHI's interest in the claim against Rolls-Royce, and seeking a reduction in the amount owed to PHI rather than contribution directly from Rolls-Royce.[102]

The second factor focuses on the nature, type, and purpose of the contract. The sales contract by which Rolls-Royce's engine was installed in the helicopter that was ultimately sold to PHI by a Canadian company was for the purpose of ferrying

---

[102]     See *Romano v. Metropolitan Life Insurance Company*, 2016-0954 (La. App. 4 Cir. 05/24/17), 221 So.3d 176, 180-81, for an explanation of the "virile share credit" under pre-comparative fault law in Louisiana.

oil and gas industry workers among land-based locations and offshore installations. Because no specific evidence has yet been introduced evidencing a limited warranty for the rest of the engine (aside from the No. 2 bearing), the sale itself gave rise to the statutorily based implied warranty of merchantability that is a feature of every product sold by Indiana companies that qualify as merchants, and no express warranty is involved. The purpose of the statutory provision is to help assure the quality of products manufactured or sold in Indiana and to help protect the buyers of those products.

The limited warranty that Rolls-Royce issued when PHI bought a replacement bearing from it specified that Indiana law would apply and that an Indiana court would decide any disputes arising out of that purchase. Rolls-Royce argued in the Indiana litigation that a similar warranty applied not just to the replacement bearing but also to the engine that Rolls-Royce manufactured and was installed in PHI's helicopter.[103] If so, Rolls-Royce could not be liable for consequential damages at all under Indiana law, and therefore, could not be liable for the loss of the helicopter.

The third factor focuses on the relationship of each involved state to the parties and the dispute, the policy of upholding the justified expectation of the parties, and minimizing the adverse consequences of subjecting a party to the laws of more than

---

[103]     See Footnote 80, *supra*.

one state, as well as the policies of facilitating the orderly planning of transactions, promoting multistate commercial intercourse, and protecting one party from undue imposition by the other.

Indiana has an interest in protecting its businesses such as Rolls-Royce and ensuring that the contracts that they enter into are enforced and the consumer is protected by the *implied warranty of merchantability,* but only to the extent the implied warranty is not otherwise limited by a specific warranty. If there is no limitation of warranty, Indiana law makes it more difficult to recover consequential damages by imposing a higher burden of proof on causation. Thus, Indiana law is more protective of the seller/manufacturer in most contexts when it comes to damages that are not considered direct damages.

Indiana has an interest in assuring that if one of its corporate citizens is found liable to an out-of-state entity, then its citizen's liability is apportioned in accordance with its laws on that subject, i.e. in a more restrictive fashion than Louisiana's law of redhibition. Since Indiana does not recognize liability for consequential damages based purely on one's status as a manufacturer, nor does it recognize solidary liability in a contract or quasi-contract context as set forth below, this policy would be impaired if Indiana law was not applied.

Apical argued that it should not matter since Rolls-Royce is no longer a party to this suit. However, Louisiana has an interest in seeing that its corporate citizen,

PHI, is awarded appropriate damages to fully compensate it if injured by a manufacturer of a product with a redhibitory defect. This goal was accomplished at the trial on the merits when Apical was held completely liable for the loss of the helicopter and given a credit for the value of the engine. Likewise, Rolls-Royce and PHI obtained what they could have obtained in Indiana applying Indiana law – a settlement of the direct damages claim perhaps with some consideration for the risk of the imposition of consequential damages. If the Louisiana law applicable to manufacturers is applied now, both Indiana's stricter policy toward the award of consequential damages and Louisiana's policy to fully compensate its citizens would *both* be impaired.

In other words, by virtue of having to litigate in two separate proceedings, PHI settled its claim based on the assumption that all of its claims against Rolls-Royce would be governed by Indiana law, as the Indiana court had ruled. However, if in this separate proceeding, Rolls-Royce is somehow found liable for *all* damages just because of its status as a manufacturer (assuming damages and causation), and Apical is given a credit for the engine and a fifty percent reduction in the amount the jury found that Apical owed, PHI would not be fully compensated for its loss for which it admittedly bore no responsibility under any scenario. This result would not foster Louisiana's interest in assuring that its corporate citizens are fully compensated when they are damaged by defective products sold to them by out of

state vendors. What exists at the causation stage for consequential damages is whether the Rolls-Royce engine contained a defect that rendered it unfit for its intended use, and if so, whether that defect caused the "direct, immediate, and probable result" of the helicopter inverting and submerging. It matters not that Rolls-Royce is no longer a party as Indiana law and its policy considerations would have been an integral part of any settlement entered into between PHI and Rolls-Royce.[104] This is particularly so in this case since PHI had no notice that Apical would seek to impose Louisiana law of solidary liability at the time PHI and Rolls-Royce were in settlement negotiations.

The Indiana court gave no indication that the law of any state other than Indiana would be applied to PHI's claim against Rolls-Royce. The application of Indiana law would assure that the justified expectations of Rolls-Royce and PHI would be upheld as they applied to the sale of the engine or the No. 2 bearing. As previously indicated, the interests of California have no role in this analysis given the remand ruling that Apical's liability cannot be relitigated.

---

[104]     Based on the facts that were undisputed from the outset, it is arguable if not likely that PHI substantially discounted any settlement demand down from the full value of the helicopter as the engine failure, if caused by a defect that was unrelated to the No. 2 bearing, did not seem to result in the direct, immediate, and probable inversion of the helicopter after the floats failed. This assertion is supported by the jury's verdict that the redhibitory defect in the float system caused all the damage to the helicopter.

Indiana's policy of protecting its corporate citizens, as reflected in the Indiana Code, would be more impaired if Louisiana law were applied to the causation element of the implied warranty of merchantability. Therefore, this Court finds that Indiana law regarding the implied warranty of merchantability should apply, including giving PHI the opportunity to demonstrate that a limited warranty is applicable that would preclude the availability of consequential damages. Because the policies underlying the two states' laws are not the same when it comes to causation and consequential damages, the application of Indiana law to PHI's claim against Rolls-Royce would not be an abrogation of the Fifth Circuit's ruling severing that claim from PHI's claims against Apical and OHS and transferring it to Indiana. Nor would the application of Indiana law be in derogation of any ruling by the Indiana court.

Because there is a true conflict between Indiana law and Louisiana law concerning these two issues, Louisiana's conflict-of-law rules require that Indiana law must be applied to the issue of Rolls-Royce's potential liability to PHI for breach of the implied warranty of merchantability and the availability of consequential damages. Therefore, this Court finds that Indiana law applies to the issue of whether Rolls-Royce is liable to PHI for any defect in the engine, aside from the No. 2 bearing, that made the engine unfit for its ordinary use, which directly, immediately,

and probably resulted in the helicopter inverting, submerging. and causing the loss of the entire helicopter.[105]

## 2.  Which State's Law Applies to the Issue of Rolls-Royce and Apical's Potential Solidary Liability?

Solidary liability is a concept relevant to the distribution of loss among liable parties rather than a concept designed to shape the conduct of parties. In its briefing, Apical did not address whether Indiana law differs from Louisiana law concerning this issue. The analysis required by Louisiana's conflict-of-laws rules does not lead in a different direction and support a different conclusion for loss allocation because there is a true conflict between Indiana law and Louisiana law with regard to the potential allocation of loss between Rolls-Royce and Apical and, more specifically, to the issue of solidary liability.

Louisiana statutory law provides that '[a] solidary obligation arises from a clear expression of the parties' intent or from the law."[106] At least at this stage, there is no actual evidence of a written contract that was negotiated between PHI and Rolls-Royce governing their relationship to the allegedly defective engine aside from the limited warranty applicable to the No. 2 bearing. That warranty document

---

[105]    IC 26-1-2-314, IC 26-1-2-714, IC 26-1-2-715; *Irmscher Suppliers Inc. v. Schuler* 909 N.E.2d at 1051; *Gagne v Enduramax LLC,* 2011 WL 6141053 at *3; *Chesaco Motors, Inc v. Gulf Stream Coach, Inc.,* 2013 WL 1281827 at *6.

[106]    La. Civ. Code art. 1796

limited PHI's potential recovery to the value of the No. 2 bearing alone. Setting aside the issue of whether the warranty failed to serve its essential purpose, the intent that can be derived from the limited warranty is that Rolls-Royce could not in any way be subjected to joint and several, or solidary, liability.

PHI did not purchase the engine directly from Rolls-Royce. According to the Indiana court, it is undisputed that Rolls-Royce designed and manufactured the engine then sold it to Bell Helicopter Canada in 1999, and it is equally undisputed that Bell sold a helicopter to PHI in 2009 with that engine already installed in it.[107] Therefore, absent any evidence of a contract between Rolls-Royce and PHI other than the limited warranty, rather than being obligated under a contract, to the extent a solidary obligation exists at all, it would have to be by operation of law.

In concluding that a trial was needed on the issue of solidary liability, the Fifth Circuit relied on jurisprudence that predated the 1996 revision of the Civil Code articles on solidary liability and principles of tort law that are not applicable to the quasi-contract doctrine of redhibition. In 1996, the Louisiana legislature amended Louisiana Civil Code Articles 2323 and 2324 and abolished solidary liability among

---

[107]     *Petroleum Helicopters, Inc. v. Rolls Royce Corp.*, 2016 WL 7179362 at *1.

non-intentional tortfeasors, establishing a pure comparative *fault* system for tort claims.[108]

Indiana did the same thing in 1998 with the enactment of its Comparative Fault Act found at IC 34-51-2-1, *et seq*. The act "governs any action based on fault that is brought to recover damages for injury or death to a person or harm to property."[109] Prior to the adoption of the Comparative Fault Act, under common law in Indiana, joint tortfeasors were jointly and severally liable for the indivisible harm they caused a plaintiff; however, the Act completely abrogated that theory in negligence cases.[110] Furthermore, there is no right of contribution among tortfeasors.[111] Since comparative fault only applies in tort claims, whether under Louisiana or Indiana law, Rolls-Royce cannot be held solidarily liable with Apical based on tort principles, because the only claims against either one of these two parties as the record now stands are based in quasi-contract. However, even if some type of tort analysis would apply, as suggested in the Fifth Circuit's remand ruling

---

[108]    *Dumas v. State ex rel. Dept. of Culture, Recreation & Tourism*, 2002-0563 (La. 10/15/02), 828 So.2d 530, 535.

[109]    IC 34-51-2-1.

[110]    IC 34-51-2-7; IC 34-51-2-8, *Dallas v. Cessna,* 968 N.E. 2d 291, 297-98 (Ind. Ct. App. 2012) (citing *Ind. Dept. of Ins. v. Everhart*, 960 N.E.2d 129, 138 (Ind. 2012)).

[111]    IC 34-51-2-12.

in its citations to tort cases, the application of pure comparative fault under Louisiana or Indiana law would bar the application of solidary liability.

In 1972, the Louisiana Supreme Court held that the manufacturer and seller of a thing containing a redhibitory defect were solidarily liable to the purchaser.[112] This was memorialized in a comment to one of the Civil Code articles addressing redhibition, which states that "[w]hen the thing sold contains a redhibitory defect, the manufacturer and the seller are solidarily liable to the buyer for a return of the purchase price."[113] Indeed, there is a presumption that the manufacturer and the seller of the *same product* are solidarily bound when the purchaser asserts a successful redhibition claim.[114] That, however, is not the situation presented in this lawsuit. Apical and Rolls-Royce did not manufacture or sell the same allegedly defective product. They are the manufacturers and sellers of two very different products that happened to be installed on the same helicopter. Therefore, the principle that solidary liability exists as between the manufacturer and seller of a product containing a redhibitory defect has no applicability in this case.

---

[112]    *Media Production Consultants, Inc. v. Mercedes-Benz of North America, Inc.*, 262 So.2d 377, 381 (La. 1972).  See, also, *Womack and Adcock v. 3M Business Products Sales, Inc.*, 316 So.2d 795, 797 (La. App. 1 Cir. 1975); *LeGros v. ARC Services, Inc.*, 2003-0918 (La. App. 3 Cir. 02/25/04), 867 So.2d 63, 67.

[113]    La. Civ. Code art. 2545, Comment (c).

[114]    *Matherne Instrumentation Specialists, Inc. v. Mighty Enterprises, Inc.*, No. 15-1159, 2015 WL 3505032, at *4 (E.D. La. June 3, 2015) (citations omitted).

Furthermore, Louisiana's appellate courts are split on whether solidary liability still exists at all in the redhibition context. The Louisiana Supreme Court declined an opportunity to decide whether the amendments to the Civil Code also abolished solidary liability in redhibition cases,[115] noting that

> [s]ince the 1996 amendments to La. C.C. arts. 2323 and 2324, courts of appeal have split on the issue of whether La. C.C. arts. 2323 and 2324 apply to abolish solidary liability in redhibition cases. The First and Second Circuits have held that these articles apply to a redhibition suit. . . . On the other hand, the Fourth Circuit has held that La. C.C. art. 2323 applies only to "actions based in tort" and that a redhibition suit is a contractual action, not a tort action.[116]

Thus, there is an unresolved issue in Louisiana law concerning whether a manufacturer can be held solidarily liable with a seller of *the same* defective product when the purchaser of the product asserts a redhibition claim. Again, however, a different factual scenario is presented in this lawsuit. Apical, the proponent of the theory that it is potentially solidarily liable to PHI along with Rolls-Royce, has argued that the manufacturer and seller of one product allegedly containing a redhibitory defect should be found solidarily liable with the manufacturer and seller of a *different* product containing a *different* redhibitory defect. But Apical did not direct this Court's attention to a single case in Louisiana jurisprudence reaching that conclusion.

---

[115]   *Aucoin v. Southern Quality Homes, LLC*, 2007-1014 (La. 02/26/08), 984 So.2d 685, 693.

[116]   *Aucoin v. Southern Quality Homes, LLC*, 984 So.2d at 693 n. 12 (citations omitted).

Thus, solidary liability in the context of redhibition claims – assuming that it still exists at all – is much narrower than the solidary liability that was formerly available in a delictual context. Perhaps more important, this Court is aware of nothing in Indiana law affording PHI the right to seek recovery from Rolls-Royce for the damages resulting from *another* entity's product (i.e., Apical's float system) that is allegedly unmerchantable (or, in Louisiana parlance, contains a redhibitory defect). PHI stated that its research had "located no Indiana case applying solidary obligation or any comparable doctrine or principle to a breach of warranty action under Indiana law."[117] To the contrary, "Indiana does not recognize comparative causation in breach of contract claims."[118] Rather, under Indiana breach of contract law where there are multiple causes, "[t]he test of causation. . . is not whether the breach was the only cause, or whether other causes may have contributed, but whether the breach was a substantial factor in bringing about the harm."[119] In cases where there are multiple causes, the defendant who was brought to judgment paid

---

[117]   Rec. Doc. 361 at 2.

[118]   *Parke State Bank v. Akers*, 659 N.E.2d 1031, 1035 (Ind. 1995) (citing *Fowler v. Campbell*, 612 N.E.2d 596, 602 (Ind. Ct. App. 1993)). See, also, *Lifeline Youth & Family Services, Inc.*, 996 N.E. 2d 808, 814 (Ind. Ct. App. 2013).

[119]   *Fowler v. Campbell,* 612 N.E.2d at 602. See, also, *Parke State Bank v. Akers,* 659 N.E.2d at 1034-35; *Wesco Distribution, Inc., v. ArcelorMittal Indiana Harbor, LLC.,* 23 N.E.3d 682, 695 (Ind. Ct. App. 2014).

for the damages caused by the breach if the breach was a substantial factor in causing the damages without regard to whether there was any form of comparative causation.

In the 1993 case of *Fowler v. Campbell*, homeowners brought a breach of contract claim against their builder based on the builder's failure to install a septic system according to specific plans and specifications. The builder contended there was no deviation from the plans and specifications and argued that the homeowners introduced foreign material into the septic system, causing it to fail. The court found that while the homeowners' actions contributed to the failure, the builder's "failure to install the septic system according to the Plans was a substantial factor in bringing about the [homeowners'] damages, which is all that is required."[120] Since there was no comparative causation, the builder was responsible for the total loss.

Likewise, in the 1995 case of *Parke State Bank v. Akers*, the bank had allegedly violated its safe deposit box rental contract when it permitted unauthorized access to a jointly-held safe deposit box. Jointly-held certificates of deposit were removed and endorsed by only one of the joint owners, depriving the other co-owner of its interest in the CD. The bank contended that the wrongful act of one of the co-owners should have been considered. The Indiana Supreme Court held that "while [the co-owner's] subsequent endorsement and distribution of proceeds from the

---

[120]     *Fowler v. Campbell,* 612 N.E.2d at 602.

certificates to his daughter. . . and her children may have contributed to Ardith's loss, Indiana does not recognize comparative causation in breach of contract claims . . . The trial court properly concluded that the Bank's breach of contract was a substantial factor in bringing about Ardith's damages."[121] The bank was held liable for the full amount.

Both of these cases predate the enactment of the Comparative Fault Act. Both involved a different source of conduct that caused an indivisible harm. Yet, it was only the entity that breached the contract that was held liable. Accordingly, while Indiana law expressly recognizes joint and several liability, as well as a right of contribution, in a commercial paper context,[122] this Court has been directed to no statutory or jurisprudential authority establishing that Indiana law allocates losses in breach of warranty cases on the basis of solidarity as that term is understood in Louisiana law.

Subjecting PHI to the law of Louisiana on loss allocation between PHI and Rolls-Royce would also have the adverse consequence of reducing PHI's recovery by the value of the engine *and* potentially fifty percent of the liability found by the jury to be the responsibility of Apical. When the claims against the defendants were sought to be severed by Rolls-Royce, this Court, in denying the motion based on the

---

[121]   *Parke State Bank v. Akers,* 659 N.E.2d at 1034-35 (citations omitted).

[122]   See IC 26-1-3.1-116.

considerations of Fed. R. Civ. P. Rule 21, was concerned about the possibility of two trials in which one defendant would point to the other in each venue, leaving the possibility that a jury in one state could find the defendant in the other state to be one hundred percent of the cause of the loss and vice-versa, leaving PHI with no recovery for a loss it had no responsibility for whatsoever. Once severance and transfer occurred, faced with the applicability of Indiana law, PHI justifiably relied upon the absence of solidary liability in making its decision to settle. The later addition of the risk associated with the previously undisclosed argument in favor of the application of Louisiana law of loss allocation undermines the policy of settling the claims in Indiana because it does not minimize the risk of adverse consequences if PHI is subjected to the laws of multiple states.

Apical should also be considered in the solidarity calculus. While Apical claims that Louisiana's unique doctrine of solidary liability should be applied, Apical's relationship to Louisiana law is tenuous at best. Apical is a California company that sold its float system to Bell (a Canadian company) to install on a helicopter Bell sold to PHI in Louisiana. Because the Fifth Circuit severed PHI's claim against Rolls-Royce, Apical was not a party to the Indiana litigation and could not be liable under a comparative causation analysis in Indiana. However, Rolls-Royce could be found not to have been the cause of the helicopter loss at all.

Despite specific rulings and factual findings from the Indiana court, Apical argued that Indiana law should not be applied here because there was no transaction between PHI and Rolls-Royce regarding the "engine."[123] Rather, much like Apical, Rolls-Royce sold the engine to Bell who put it in the helicopter sold to PHI. Apical cited no authority for the proposition that Indiana would even consider a choice-of-law analysis for the loss allocation caused by Apical's float system, but if it did, and Indiana law applied to the claim against Apical, the jury's finding would be undisturbed. The result of now applying Louisiana law retroactively to the trial of Rolls-Royce's liability in Louisiana, after the case against Rolls-Royce was severed and transferred, would be inconsistent rulings between two federal courts on the same issue.

PHI argued persuasively that the policies of both Indiana and Louisiana would be served if Indiana law regarding loss allocation were applied. The Louisiana law of redhibition reflects a policy of Louisiana's interest in ensuring that its citizens are fully compensated for their losses caused by a redhibitory defect, particularly where a manufacturer is involved who is deemed to be in bad faith. The policy of Louisiana to award full compensation would be impaired if Louisiana law on loss allocation was applied now between two defendants because applying Louisiana law would

---

[123]   Rec. Doc. 364 at 4.

result not only in a reduction for the value of the engine allocated to Rolls-Royce (i.e. substantially more than the value of the No. 2 bearing as required in the limited warranty) but in an additional fifty percent reduction of PHI's recovery from Apical if Rolls-Royce is found to be a solidary obligor with Apical.

Indiana's substantial interest in the uniform application of its laws concerning allocation of loss in the event of an implied warranty of merchantability claim would also be impaired if its law were not applied as Indiana does not recognize solidary liability in this context, as explained above. Rather, Indiana would recognize that, if the manufacturer is found to have breached the warranty, it would be liable for direct damages, and "in a proper case" perhaps consequential damages, assuming the heightened standard of causation is met. Indiana would not visit the liability of another party on its corporate citizen. Therefore, Louisiana's policy would be the least impaired if Indiana law was applied, and both Indiana and Louisiana's policies would be impaired if Louisiana law was applied.

This Court took Rolls-Royce's role in this litigation into consideration by decreasing the jury's award in favor of PHI by an amount equal to the value of helicopter's engine. The jury found that the redhibitory defect in the Apical float caused the loss of the helicopter and awarded PHI $2.18 million, the full value of the helicopter including its engine. Because the engine failed before the helicopter was forced to land in the water, this Court reasoned that the redhibitory defect in the

float did not cause the loss of the engine. Therefore, this Court deducted the sum that was determined to be the value of the engine – $450,230 – from the jury's award, which is a result consistent with the application of Indiana law on loss allocation that does not recognize comparative causation in contract claims or anything resembling solidary liability under Louisiana law.

Finally, in light of the Fifth Circuit's severance and transfer decision and in light of the Indiana court's application of Indiana law to PHI's claim against Rolls-Royce, this Court finds that the application of Louisiana law to PHI's claim against Rolls-Royce simply cannot be what the Fifth Circuit envisioned when the claim was severed and transferred. In enforcing the choice-of-law provision in the limited warranty and transferring PHI's claim against Rolls-Royce to Indiana, the Fifth Circuit, in essence, mandated the application of Indiana law to that claim. To now apply Louisiana law retroactively to that claim would be inconsistent with the Fifth Circuit's transfer ruling. Further, if Louisiana law were to be applied, PHI would find itself having to defend what is essentially an absent non-party based on the application of another state's law (Louisiana) when the court where the litigation was transferred by the Fifth Circuit has ruled that PHI did not have any claim under that law. This Court finds that the imposition of solidary liability concepts under Louisiana law to Rolls-Royce due to a sale by this Indiana manufacturer and seller

would be an abrogation of the Fifth Circuit's ruling severing and transferring the claim to Indiana.

## **Order**

For the reasons set forth above, this Court finds (a) that Indiana law applies to the issue of whether Rolls-Royce is liable to PHI for any defect in the engine other than No. 2 bearing that made the engine unfit for its ordinary use and directly, immediately, and probably caused the helicopter to invert and submerge, resulting in the loss of the entire helicopter; and (b) Indiana law applies to the apportionment of loss as between Rolls-Royce and Apical, precluding the applicability of solidary liability under the facts of this case.  Accordingly,

IT IS ORDERED that no trial on the issue of solidary liability will be scheduled by this Court, and this Court's judgment will be reinstated.

Signed at Lafayette, Louisiana, this 7th day of January 2021.

_____
PATRICK J. HANNA
UNITED STATES MAGISTRATE JUDGE